FORM 104 (10/06), Page 1

**ADVERSARY PROCEEDING COVER SHEET**
(Instructions on Reverse)

**ADVERSARY PROCEEDING NUMBER**
(Court Use Only)

| **PLAINTIFFS** | **DEFENDANTS** |
|---|---|
| Leslie McDaniel, Individually and as Representative of her Bankruptcy Estate | SunTrust Bank, SunTrust Mortgage, Inc., McCalla Raymer, LLC, Foxfire Acres, Inc., The United States by and through The Internal Revenue Service, The State of Georgia (Represented by The Department of Revenue), The Grogan Group, LLC d/b/a Grogan & Grogan, and The Columbus Consolidated Government |

| **ATTORNEYS** (Firm Name, Address, and Telephone No.) | **ATTORNEYS** (If Known) |
|---|---|
| Fife M. Whiteside | |
| Fife M. Whiteside,P.C. | |
| P.O. Box 5383 | |
| Columbus, GA 31906 | |
| (706) 320-1215 | |

| **PARTY** (Check One Box Only) | **PARTY** (Check One Box Only) |
|---|---|
| X Debtor ☐ U.S. Trustee/Bankruptcy Admin | ☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin |
| ☐ Creditor ☐ Other | X Creditor ☐ Other |
| ☐ Trustee | ☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Suit for declaratory judgment on Debtor's interest in property, determination of lien in property, suit for sale free and clear of liens, suit for equitable subordination, suit for damages under state law.

**NATURE OF SUIT**
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) - Recovery of Money/Property**

☐ 11-Recovery of money/property - §542 turnover of property

☐ 12-Recovery of money/property - §547 preference

☐ 13-Recovery of money/property - §548 fraudulent transfer

☐ 14-Recovery of money/property - other

**FRBP 7001(2) - Validity, Priority or Extent of Lien**

X 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) - Approval of Sale of Property**

X 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) - Objection/Revocation of Discharge**

☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) - Revocation of Confirmation**

☐ 51-Revocation of Confirmation

**FRBP 7001(6) -Dischargeability**

☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims

☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud

☐ 67-Dischargeability - §523(a),(4),fraud as fiduciary,embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) - Dischargeability (continued)**

☐ 61-Dischargeability - §523(a)(5), domestic support

☐ 68-Dischargeability - §523(a)(6), willful and malicious injury

☐ 63-Dischargeability - §523(a)(8), student loan

☐ 64-Dischargeability - §523(a)(1),(15), divorce or separation obligation (other than domestic support)

☐ 65-Dischargeability - other

**FRBP 7001(7) - Injunctive Relief**

☐ 71-Injunctive relief - reinstatement of stay

☐ 72-Injunctive relief - other

**FRBP 7001(8) -Subordination of Claim or Interest**

X 81-Subordination of claim or interest

**FRBP 7001(9) -Declaratory Judgment**

X 91-Declaratory judgment

**FRBP 7001(10) - Determination of Removed Action**

☐ 01-Determination of removed claim or cause

**Other**

☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*

X 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| X  Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP  23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $100,000.00 |

Other Relief Sought

FORM 104 (10/06), Page 3

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Leslie McDaniel | | BANKRUPTCY CASE NO.<br>12-41231-JTL |
| DISTRICT IN WHICH CASE IS PENDING<br>Middle District of Georgia | DIVISIONAL OFFICE<br>Columbus Division | NAME OF JUDGE<br>John T. Laney, III |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLANTIFF) | | |
| DATE<br>10/17/2013 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Fife M. Whiteside | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 104, the Adversary Proceeding Cover Sheet, if it is required by the court. In some courts, the cover sheet is not required when the adversary proceeding is filed electronically through the court's Case Management/Electronic Case Files (CM/ECF) system. (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants**. Give the names of the plaintiffs and the defendants exactly as they appear on the complaint.

**Attorneys**. Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and in the second column for the defendants.

**Demand**. Enter the dollar amount being demanded in the complaint.

**Signature**. This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is *pro se*, that is, not represented by an attorney, the plaintiff must sign.

IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA

| | | |
|---|---|---|
| In re: | * | CHAPTER 13 |
| | * | |
| LESLIE McDANIEL, | * | CASE NO. 12-41231-JTL |
| | * | |
| Debtor, | * | JUDGE LANEY |

---

| | | |
|---|---|---|
| LESLIE McDANIEL, Individually and as | * | |
| Representative of her Bankruptcy Estate, | * | |
| | * | |
| Plaintiff, | * | ADVERSARY PROCEEDING |
| | * | |
| vs. | * | NO. _____ |
| | * | |
| SUNTRUST BANK, SUNTRUST | * | |
| MORTGAGE, INC., McCALLA | * | |
| RAYMER, LLC, FOXFIRE ACRES, INC., | * | |
| THE UNITED STATES by and through the | * | |
| THE INTERNAL REVENUE SERVICE, | * | |
| THE STATE OF GEORGIA (Represented | * | |
| by the DEPARTMENT OF REVENUE), THE | * | |
| GROGAN GROUP, LLC d/b/a GROGAN & | * | |
| GROGAN, and THE COLUMBUS | * | |
| CONSOLIDATED GOVERNMENT, | * | |
| | * | |
| Defendants. | * | |

## COMPLAINT FOR DECLARATORY JUDGMENT AND LIEN AVOIDANCE, EQUITABLE SUBORDINATION, SALE FREE AND CLEAR OF LIENS, AND DAMAGES UNDER GEORGIA STATE LAW

COMES NOW, **Leslie McDaniel**, herein **"Debtor"** or **"Plaintiff"**[1], and brings the within Complaint for Declaratory Judgment and Lien Avoidance, Equitable Subordination, Sale Free and Clear of Liens, and Damages Under Georgia State Law, herein "Complaint", against **SunTrust Bank**, herein **"SunTrust"**, **SunTrust Mortgage, Inc.**, herein **"SunTrust Mortgage"**,

---

[1]This complaint is brought by Debtor on her own behalf to the extent of her exemptions, and on behalf of her estate to the benefit of creditors.

**McCalla Raymer, LLC**, herein **"McCalla"**, **Foxfire Acres, Inc.**, herein **"Foxfire"**, The United States by and through the **Internal Revenue Service**, herein **"IRS"**, the **State of Georgia** (represented by the Department of Revenue), herein **"DOR"**, **The Grogan Group, LLC d/b/a Grogan and Grogan**, herein **"Grogan"**, and the **Columbus Consolidated Government**, herein **"Columbus"**, and says the following:

JURISDICTION

1.

This Court has jurisdiction pursuant to 28 U.S.C. § 1334, and the standing order of reference.

2.

The matters set forth herein are such as to make it a core proceeding which the Court may hear, and determine, without reference to the District Court.

3.

The subject matter of the suit involves mixed claims under bankruptcy law and Georgia State law, so that the suit may be subject to by bifurcation and reference to the District Court as to the State law claims.

PARTIES

4.

Debtor, Leslie McDaniel, is a debtor in this voluntary bankruptcy case brought under Chapter 13 of Title 11, filed December 21, 2012, herein "date of filing", and is in pre-confirmation status.

5.

SunTrust is a Virginia banking corporation, having offices, among other places, in Columbus, Georgia.

6.

SunTrust Mortgage is a Georgia corporation doing business in Columbus, Georgia, at 6310 Bradley Park Drive, Columbus, Georgia.

7.

McCalla Raymer, LLC is a Georgia limited liability corporation engaged in the practice of law in the State of Georgia, and having its principal place of business in Roswell, Georgia.

8.

Foxfire Acres, Inc., is a Georgia Corporation with principal place of business in Columbus, Georgia.

9.

The United States of American by and through the IRS is the sovereign government of this country and is represented in interest by its taxing authority, the Internal Revenue Service.

10.

The State of Georgia, through the Department of Revenue, is a sovereign government within the United States and is represented by its principal taxing authority, the Department of Revenue.

11.

Consolidated Government of Columbus is the municipal government for the municipality in which the property lies.

12.

Grogan is an ostensible Georgia Limited Liability Company, although not registered, and it is the corporate entity for law practice, which represented Debtor and holds a judgment for fees which is avoidable as impairing exemptions, under 11 U.S.C. § 522(f).

<u>PRE-PETITION BACKGROUND</u>

13.

Leslie L. McDaniel, the Debtor herein, and Charles W. McDaniel ("Mr. McDaniel") are the co-makers of a promissory note dated February 13, 1992 (the "Note"), evidencing a loan in the original principal amount of One Hundred Six Thousand Four Hundred Dollars ($106,400.00) (the "Loan"), in favor of Trust Company Bank of Columbus, N.A. ("Trust Company Bank").

14.

The Note is secured by a first lien Deed to Secure Debt, executed by Leslie L. McDaniel and Mr. McDaniel in favor of Trust Company Bank, also dated February 13, 1992, encumbering the Debtor's purported sole asset which is described in the Security Deed (the "Property") and recorded in Deed Book 3537, Pages 122-126, Muscogee County, Georgia Real Property Records

(the "Security Deed"). A true and correct copy of the Security Deed is attached hereto as **Exhibit "1"** and incorporated by reference herein.

15.

The Loan was last modified by that certain Security Deed and Note Modification Agreement, secured by the Property and dated May 1, 1997, recorded in Deed Book 4708, Pages 241-244, Muscogee County, Georgia Real Property Records (the "Loan Modification"). A true and correct copy of the Loan Modification is attached hereto as **Exhibit "2"** and incorporated by reference herein.

16.

SunTrust bank, as successor by merger to Trust Company Bank, is the holder of the Note and Security Deed as last modified by the Loan Modification.

17.

SunTrust Mortgage was the servicer of the Loan.

18.

The Debtor and Mr. McDaniel were married at the time of the execution of Exhibit "1", but subsequently separated and obtained a divorce. They remarried and then obtained a second divorce by decree of the Superior Court of Muscogee County, on April 11, 2005, and a copy of that Decree is attached hereto and incorporated by reference as **Exhibit "3"**. It (and the property settlement agreement attached) are herein referred to as "Divorce Decree".

19.

Pursuant to the Divorce Decree, at "Equitable Division", Paragraph 5, Debtor agreed to assume the obligation to pay SunTrust, the property having been previously deeded by Mr. McDaniel to Debtor (as a result of the first divorce), by Deed recorded at Muscogee County Superior Court Land Deed Book 6085, at Page 146, and a true and accurate copy of that Deed is attached hereto and incorporated by reference as **Exhibit "4"**.

20.

Pursuant to the divorce decree, at "Equitable Division", Paragraph 5, the Debtor was to assume responsibility for payments on the Note and Security Deed, as last modified by the Loan Modification.

21.

Debtor defaulted under the Note and Security Deed (as last modified by the Loan Modification).

22.

The obligation secured by the Note and Security Deed, as last modified by the Loan Modification, was due and payable upon demand by SunTrust, as provided in the terms of these security documents.

23.

Debtor failed to cure the default or reinstate the Loan following such demand.

24.

Multiple demands were made through McCalla on Debtor by SunTrust or SunTrust Mortgage. These were by letters dated January 21, 2010, January 25, 2010, February 23, 2010, September 23, 2010, and September 27, 2010.

25.

Because of the default and the failure to reinstate the Loan following demand, a foreclosure was commenced by SunTrust Mortgage, by publication of a notice of foreclosure ("Foreclosure Notice") in the Columbus Ledger-Enquirer in the weeks of October 4, October 11, October 18, and October 25, 2010.

26.

The Foreclosure Notices, a true and accurate copy of one of which is attached hereto and incorporated herein as **Exhibit "5"**, contained the following language:

> "The entity that has full authority to negotiate, amend, and modify all terms of the mortgage with the debtor is SunTrust Mortgage, Inc., 1001 Sims Avenue, Richmond, Virginia, 23224, 866-384-0903."

The foreclosure ad was predicated on the statement and allegation contained therein that SunTrust Mortgage was the proper foreclosing creditor.

27.

SunTrust Bank, however, was the actual holder of the Security Deed at the time the foreclosure advertisements were commenced, and not SunTrust Mortgage.

28.

On November 2, 2010, Defendant Foxfire, through an agent, Glenn K. Albright, III, Corporate Vice-President ("Mr. Albright"), appeared at the Courthouse steps, Government Center, Columbus, Muscogee County, Georgia, the place for which the foreclosure sales were advertised, and the place where foreclosure sales were to be held in accordance to law.

29.

The foreclosure was conducted by an employee, member, or contract party for McCalla Raymer, who appeared at the Courthouse steps on November 2, 2010, and began the foreclosure process by publicly knocking off the sale to any member of the public, the property being 2627 Meadowview Drive, Columbus, Muscogee County, Georgia, for sale to this highest bidder pursuant to the power of sale contained in the Security Deed held by SunTrust Bank in reference in the foreclosure advertisement, as being owned by SunTrust Mortgage, Inc.

30.

Foxfire, through Albright, bid against other interested persons, and Foxfire was the highest bidder at the public foreclosure sale on November 2, 2010.

31.

Foxfire paid $126,000.00 ("Bid Price") to McCalla Raymer, for SunTrust or SunTrust Mortgage, and this payment was accepted.

32.

Under Georgia law, O.C.G.A. § 44-14-160, SunTrust or SunTrust Mortgage was under an obligation to record the foreclosure Deed, as is set as follows:

> "Within 90 days of a foreclosure sale, ***all deeds under power shall be recorded by the holder of a deed to secure debt*** or a mortgage with the clerk of the superior court of the county or counties in which the foreclosed property is located. The clerk shall write in the margin of the page where the deed to secure debt or mortgage foreclosed upon is recorded the word "foreclosed" and the deed book and page number on which is recorded the deed under power conveying the real property; provided, however, that, in counties where the clerk keeps the records affecting real estate on microfilm, the notation provided for in this Code section shall be made in the same manner in the index or other place where the clerk records transfers and cancellations of deeds to secure debt."

Id. *Emphasis added.*

33.

Although SunTrust Mortgage had accepted the funds paid over, neither SunTrust Mortgage nor SunTrust caused a Foreclosure Deed to be recorded.

34.

Since SunTrust Mortgage, the entity which advertised and attempted to foreclosure the property, did not own the Security Deed at the time of the foreclosure, the foreclosure was void.

35.

Although Foxfire knew that the Security Deed had not been assigned to SunTrust Mortgage prior to the foreclosure, it reasonably assumed that the assignment would be, since it is required by law, and only after the foreclosure sale, through a title examination, formed in order to facilitate Foxfire's obtaining a loan in the amount of the bid proceeds which he has already paid over to McCalla Raymer, did Foxfire discover the assignment had not been made. A true and accurate copy of the abstractor's letter to McCalla pointing out the defect in the foreclosure is attached as **Exhibit "6"**.

36.

Although McCalla Raymer forwarded an unrecorded foreclosure Deed to Foxfire, Foxfire refused to accept it, because Foxfire was on notice of the defect in the mortgage, and knew that the foreclosure Deed, if recorded, would be void itself, and would not convey good title.

37.

Indeed, after the post-foreclosure title exam, Foxfire was unable to obtain an assurance of insurable title and therefore could not borrow money against the property to repay itself for the foreclosure proceeds.

38.

Foxfire made several demands, informally and formal, on McCalla, SunTrust, and SunTrust Mortgage, trying to obtain a refund of the "Bid Price" $126,000.00 paid by Foxfire to McCalla either for SunTrust or for SunTrust Mortgage.

39.

McCalla, SunTrust, and SunTrust Mortgage, although they knew the foreclosure sale was void because of the failure to record the SunTrust held mortgage to SunTrust Mortgage prior to the foreclosure sale, refused to refund the foreclosure proceeds to Foxfire.

40.

The payment by Foxfire coupled with the failure to promptly rescind the foreclosure under O.C.G.A. § 19-13-172.1 resulted in the satisfaction of the debt evidenced by the Note.

41.

Subsequently, Foxfire brought suit against SunTrust Mortgage and McCalla Raymer, and a true and accurate copy of the Complaint filed against them is attached hereto and incorporated by reference as **Exhibit "7"**.[2]  Foxfire's Complaint, at Paragraphs 10, 11, 12, and 13, recited the facts of the foreclosure sale, as well as the tender of a foreclosure Deed, in contravention of Georgia law, quoted above.

42.

However, SunTrust, although in a position to know what its agents did, denied the allegations of each paragraph of the Plaintiff's Complaint, therefore denying that the foreclosure was complete.  A true and accurate copy of SunTrust Mortgage's Answer is attached hereto and incorporated by reference as **Exhibit "8"**.[3]

43.

In the litigation that follows, in order to avoid any obligation to repay the sales price to Foxfire, as is set forth more fully below, SunTrust Mortgage ambiguously took the position that the foreclosure had not been completed until August 27, 2013, when it clarified its position that the foreclosure was not complete.

---

[2]The allegations of the Complaint are not incorporated by reference and do not require response.

[3]See FN 2.

44.

At the time that the foreclosure was attempted, there were multiple subordinate tax liens on the property detailed as follows:

| Claimant/Interest Holder | Nature of Claim / Treatment on Sale |
| --- | --- |
| United State of America (by and through the IRS) | Federal tax lien for various years - to be paid according to priorities established of record |
| State of Georgia (represented by the Georgia Department of Revenue) | State tax liens for various years - to be paid according to priorities established of record |
| SunTrust, SunTrust Mortgage | Security Deed liens to secured disputed claims - To be paid as ordered by the Court |

45.

There are now additional liens or claims to the property.  These are detailed as follows:

| Claimant/Interest Holder | Nature of Claim |
| --- | --- |
| Foxfire | Claim related to failed foreclosure - to be paid nothing on sale |
| Grogan | Judgment lien (avoidable under § 522(f) - to be paid nothing on sale |
| Columbus | Tax lien for unpaid taxes in 2011, 2012 and 2013 - to be paid in full on sale |

46.

On best information and belief, the taxing authorities were properly notified of the foreclosure, so that if the foreclosure had been complete, at least to the extent of the foreclosure, the taxing authorities liens would have been extinguished on the property.

47.

The value of the property exceeded the value of the debt (represented by the Note) owed to SunTrust or SunTrust Mortgage, by at least seven thousand dollars ($7,000.00), even in a liquidation, foreclosure context, and there was a surplus, by at least that amount.

48.

None of SunTrust, SunTrust Mortgage, or McCalla took an action to either refund Foxfire its money and re-call the foreclosure, or record a foreclosure deed, and pay over the surplus to Debtor.

49.

Nothing has happened with the property since November 2, 2010, almost three years prior to the filing of this Adversary Proceeding.

50.

The property became what is commonly referred to as a "zombie foreclosure", with no action being taken by the lender, SunTrust or SunTrust Mortgage, to keep it up, maintain the premises, or satisfy city ordinances pertaining to grounds maintenance, or to complete a foreclosure.

51.

The Debtor, whose ownership status has been questionable or nonexistent, ever since the attempted foreclosure, because of her financial circumstances, is unable to keep the property up, has neither kept the property up nor maintained the grounds.  She has been subject of legal action by the City of Columbus.  See attached **Exhibit "9"**, incorporated by reference.

52.

The value of the property has deteriorated from at least $126,000.00 to less than $40,000.00.

53.

Since the foreclosure was void, SunTrust, SunTrust Mortgage, and McCalla may claim Debtor is liable to SunTrust or SunTrust Mortgage on the Note.

54.

This obligation was extinguished by Foxfire's payment, and she has been denied the surplus which was generated when Foxfire bid more than the amount of the SunTrust debt at the time of the attempted foreclosure.

## POST-PETITION FACTUAL BACKGROUND

### 55.

The Debtor filed her voluntary bankruptcy case under Chapter 13 on December 21, 2012, the date of filing.

### 56.

Kristin Hurst, herein **"Trustee"**, was appointed as her Chapter 13 Trustee, and the Trustee maintains title and ownership in trust of all Debtor's property until confirmation.

### 57.

The Debtor proposed a Chapter 13 Plan, which has not been confirmed, which anticipates this Adversary Proceeding, and the need to require some resolution of the SunTrust or SunTrust Mortgage debt, and liquidation of the collateral in some way.

### 58.

SunTrust and SunTrust Mortgage, jointly, filed an objection to confirmation of this Plan. At Paragraphs 9, 10 and 11 of the objection, they maintain that the foreclosure was valid, even though the foreclosing creditor did not hold the Security Deed being foreclosed on, and even though after almost three years no foreclosure deed has ever been recorded, despite requirements of the law to the contrary. No foreclosure deed had ever been recorded.

### 59.

Subsequent to the filing of the objection, and after the Superior Court denied judgment on the pleadings for the Defendants in the Foxfire Complaint, SunTrust, SunTrust Mortgage, and McCalla, or some of them, in different parts, tendered on August 27, 2013, without reservation, a refund to Foxfire of the sales proceeds, including the surplus due to Debtor. There was no Bankruptcy Court Order permitting this. A true and accurate copy of the cover letter and the checks, marked "void" for security purposes, as tendered, is attached hereto and incorporated by reference as **Exhibit "10"**.

### 60.

Although not well grounded in the law or supported by the facts, and although requested to do so, SunTrust and SunTrust Mortgage have declined to withdraw their objection to the confirmation of the Debtor's plan.

## COUNT ONE

*Claims declaration under State law that the debt has been satisfied by foreclosure without confirmation or by acceptance of payment from Foxfire.*

61.

SunTrust and SunTrust Mortgage declined to file a Proof of Claim.

62.

Debtor therefore has no Proof of Claim to object to.

63.

SunTrust and SunTrust Mortgage have alleged in bankruptcy pleadings that the foreclosure was complete, and that they are not creditors.

64.

In the Foxfire litigation, Defendants have not, in their pleadings, taken an unambiguous position on whether the foreclosure was complete.

65.

The foreclosure was not completed because the foreclosing creditor did not have ownership of the Security Deed.

66.

If the Court determines and declares that the foreclosure was complete, Debtor is entitled to a declaration that the unconfirmed foreclosure extinguished all obligations Debtor owed to SunTrust or SunTrust Mortgage.

## COUNT TWO

*Declaration that the debt has been satisfied by acceptance of the payoff (the bid price) in an amount exceeding the payoff.*

67.

Should the Court determine that the foreclosure was not complete, the Court should determine that the debt has been satisfied by payment in full, though tender of the bid price, and failure by SunTrust or SunTrust Mortgage to refuse it, or rescind the sale under O.C.G.A. § 9-13-172.1.

68.

The Court should further determine that the Security Deed, the debt secured thereby having been satisfied, is extinguished.

## COUNT THREE

*Declaration that, if the debt was not satisfied by foreclosure or by extinguishment on payoff, the lender is judicially estopped to contend to the contrary.*

69.

Should the Court determine that the foreclosure was not complete, SunTrust and SunTrust Mortgage are judicially estopped from denying that the foreclosure was complete under the doctrine of judicial estoppel. See In re Tyson Funds, Inc., 732 F.Supp. 1363, 1371 (M.D.Ga. 2010).

70.

Defendants SunTrust and SunTrust Mortgage have asserted a position in the Foxfire suit that the foreclosure was not complete, a position made unambiguous by the refund of the foreclosure bid amount, without reservation. Id.

71.

Defendants SunTrust and SunTrust Mortgage unambiguously took the inconsistent position in this bankruptcy case that the foreclosure was complete.

72.

The inconsistency was calculated to make a mockery of the judicial system. Id.

73.

Debtor is entitled to a declaration that, by operation of law, the Note and Security Deed have been satisfied and extinguished.

## COUNT FOUR

*Equitable subordination of the debt for Lender's deliberate failure to act on collateral under 11 U.S.C. § 510.*

74.

Furthermore, should the Court determine that the foreclosure was not complete but determine that there is no basis for a judicial estoppel, or that the debt was extinguished by payment, or that the Court should not exercise its discretion to impose an equitable estoppel, the

Court should equitably subordinate the claim or claims of SunTrust or SunTrust Mortgage to the claims of all other creditors and order that the lien securing the claim or claims be transferred to the estate, pursuant to 11 U.S.C. § 510(c).

75.

The Defendants SunTrust, SunTrust Mortgage, and McCalla Raymer, in consort engaged in the following conduct and action which are inequitable:

a)      they failed promptly to admit, unambiguously, that the foreclosure was effective and unavailed themselves of the statutory right to rescind a defective foreclosure under O.C.G.A. § 9-13-172.1, which provides for a safe harbor for recision of defective foreclosures, but requires a refund to the bidder of the bid price and a withdrawal of the foreclosure deed, but retained the bid price for almost three years;

b)      they failed to promptly re-call the sale after a proper assignment had been filed and bid price refunded, even if outside the safe harbor or O.C.G.A. § 9-13-172.1;

c)      they delayed admitting the error in the foreclosure and the refund to the bidder for almost three years, getting the use of the funds received;

d)      they retained and inverted the surplus which belonged to the Debtor;

e)      while being unable to reach a decision on how to deal with the error in the foreclosure, they allowed the collateral value to decline to a point that the only value is the value of the lot less demolition cost;

f)      in so doing, they expressed utter contempt not just of the Debtor but all of her neighbors, by unnecessarily creating a blighted property in an affluent neighborhood;

g)      they attempted to mislead this Court by here taking a position that the foreclosure was valid when they knew it was not.

COUNT FIVE

*Authorization for sale free and clear of liens and interests of all parties under 11 U.S.C. § 363(f).*

76.

Further, whether the Court determines that the foreclosure was not complete or that it was, whether the Court determines to impose an equitable subordination or apply judicial

estoppel to extinguish the Note and Security Deed, there is cause to authorize a sale of the property free and clear of liens and interests under 11 U.S.C. § 363(f).

77.

All liens and interest in the property are in dispute in one way or another, or the claimant will be paid in full or the full value of the claimant's lien. Those claims should be treated as above, ¶ 44 and 45.

78.

The sale is in the best interest of the estate, and the Court should entertain supplemental pleadings to provide a mechanism to market and sell the property and distribute the proceeds to best maximize recovery for the estate and creditors.

COUNT SIX

*Damages for violation of the automatic stay of 11 U.S.C. § 362(k).*

79.

When SunTrust, SunTrust Mortgage, and McCalla refunded the bid price to Foxfire, it paid over the surplus generated by the bid price, to which the Debtor and Trustee had rights.

80.

This action constituted a violation of the automatic stay in bankruptcy under 11 U.S.C. § 362(a)(3), in exercising control over property of the estate.

81.

SunTrust, SunTrust Mortgage, and McCalla were on notice of the Debtor's case.

82.

The stay violation was willful.

83.

Debtor or Trustee is entitled to recover actual damages equal to the value SunTrust, SunTrust Mortgage, and McCalla transferred away, at least $7,000.00, under 11 U.S.C. § 362(k).

84.

Debtor is entitled to recover punitive damages under 11 U.S.C. § 362(k), as the stay violation was willful.

## COUNT SEVEN

*Damages under State law for attempted wrongful foreclosure against SunTrust, SunTrust Mortgage and McCalla.*

### 85.

SunTrust Mortgage when it commenced running foreclosure ads was not the holder of the Note and Security Deed and lacked the legal authority to foreclose on the property.

### 86.

As a result the notices of foreclosure which showed SunTrust Mortgage as the party to contact to attempt to negotiate the debt were insufficient to satisfy the requirements of Georgia law.

### 87.

McCalla was responsible for publication of the improper sales notices.

### 88.

The publication of the foreclosure notices was therefore wrongful.

### 89.

Debtor has suffered damages to her credit reputation and otherwise and is entitled to actual and special damages against SunTrust Mortgage and McCalla.

## COUNT EIGHT

*Damages under State law for conversion of the sales surplus, against SunTrust, SunTrust Mortgage, and McCalla.*

### 90.

Whether the Court determines that the foreclosure was valid or not, Defendants SunTrust, SunTrust Mortgage and McCalla converted the surplus of the foreclosure proceeds by retaining them for almost three years and then by giving them away to Foxfire.

### 91.

Debtor is entitled to recover actual and special damages in an amount to be determined by the Court, but not less than $7,000.00, the amount converted, and emotional damages from the series of action related to the retention of the surplus, of not less than $100,000.00.

92.

The act of holding and paying over the proceeds was willful and malicious and the Debtor is entitled to punitive damages of not less than $500,000.00.

## COUNT NINE

*Attorney's fees under State law (O.C.G.A. § 45-8-7) for stubbornly litigious conduct.*

93.

The Defendants SunTrust, SunTrust Mortgage and McCalla have acted in bad faith, have been stubbornly litigious, and have caused the Plaintiff unnecessary trouble and expense, and have caused the Debtor unnecessary legal fees and expenses.

94.

Debtor is entitled to recover reasonable attorneys fees under O.C.G.A. § 45-8-7.

THEREFORE the premises considered, Plaintiff's pray for the following relief:

a)      that the Court declare, should it determine, that the foreclosure was complete that the claim of SunTrust and/or SunTrust Mortgage has been satisfied on foreclosure with confirmation;

b)      that should the Court determine that the foreclosure was not complete SunTrust and/or SunTrust Mortgage be judicially estopped from denying same and declare the debt satisfied and the mortgage extinguished;

c)      that should the Court determine that the foreclosure was not complete SunTrust and/or SunTrust Mortgage are equitably subordinated in their debt and their lien be ordered released;

d)      that whether the Court determines that the foreclosure was complete or not, or the debt and lien extinguished by payment, or as a result of operation of the doctrines of judicial estoppel or equitable subordination, the Court order a sale of the property free and clear of liens, under 11 U.S.C. § 363(f), as all liens are in dispute with distributions as outlined above in ¶77;

e)      that the Court grant appropriate damages for violation of the automatic stay;

f)      that whether the Court determines the foreclosure was valid, the Debtor have damages under Georgia State law for conversion of the surplus;

g)    that if the Court determines that the foreclosure was not valid, the Debtor have damages under Georgia State law for attempted wrongful foreclosure;

h)    that, under either theory, the Debtor have an award of attorneys fees under Georgia State law;

i)    that the Court bifurcate the State law claims and refer same to the District Court to satisfy the requirements of Stern v. Marshall, unless defendants consent;

j)    that the Court grant other and general relief to which equity doth appertain.

Respectfully,

_____
FIFE M. WHITESIDE
Attorney for Debtor and Trustee
GA Bar 756025

P.O. Box 5383
Columbus, GA 31906
706-320-1215