EXHIBIT ___1___

ᴮᴷ 3537 ᴾ 122

**T** Trust Company Bank
of Columbus, N.A.

P O Box 431
Columbus, Georgia 31904-3190

004624

Georgia Muscogee County
Clerk's Office, Superior Court
of said County,
FILED FOR RECORD ON

**FEB 19 1992**
at 4:35 PM, and recorded in
Deed Book 3537 Folio 122
FEB 2 0 1992  19____
M. LINDA PIERCE, Clerk
S.C.M.C. GA

STATE OF GEORGIA

COUNTY OF    MUSCOGEE

DEED TO SECURE DEBT

THIS INDENTURE, made the    13th    day of    February
in the year one thousand nine hundred    Ninety Two
, between

CHARLES W. MCDANIEL AND LESLIE L. MCDANIEL

of    Muscogee    County,    Georgia    ,of the first part, hereinafter
called "Grantor," and TRUST COMPANY BANK OF COLUMBUS, N.A., Columbus, Georgia, of the second
part, hereinafter called "Grantee":
whose address is P.O. Box 431, Columbus, Georgia 31993

WITNESSETH, That Grantor, for and in consideration of the sum of    One Hundred Six
Thousand Four Hundred and 00/100

hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, (\$ 106,400.00 ) DOLLARS in
has granted, bargained, sold, aliened, conveyed and confirmed, and by these presents does grant, bargain, sell,
alien, convey and confirm unto Grantee, all that tract or parcel of land lying and being in

Columbus, Muscogee County, Georgia and being more particularly described within the
following metes and bounds, to-wit: Commence at the iron pin which marks the
southernmost terminous of the curve forming the intersection of Country Club Road and
Meadowview Drive and from said point running thence South 16 degrees 21 minutes
along the westerly margin of Meadowview Drive a distance of 45.6 feet to an iron pin;
running thence in a southwesterly direction along a curve to the left (having a radius of
1940.08 feet) forming said westerly margin of Meadowview Drive a distance of 164.83
feet to an iron pin; running thence North 87 degrees 54 minutes West a distance of 81.85
feet to an iron pin which marks the southeasterly corner of Lot 8, Block D, Hilton
Heights Subdivision, running thence North 02 degrees 39 minutes East along the easterly
line of Lot 8, Block D, Hilton Heights Subdivision a distance of 206.6 feet to an iron pin
located on the southeasterly margin of Country Club Road; running thence North 66
degrees 45 minutes East along the southeasterly margin of Country Club Road a distance
of 80.0 feet to an iron pin; running thence in an easterly direction along a curve to the
right (having a radius of 40.7 feet) forming the intersection of Country Club Road and
Meadowview Drive a distance of 40.55 feet to an iron pin; running thence in an easterly
and southerly direction along a curve to the right (having a radius of 30.2 feet) forming
the intersection of Country Club Road and Meadowview Drive a distance of 38.2 feet to
the iron pin which marks the point of beginning of the property hereby conveyed.
Located thereon is dwelling number 2627 Meadowview Drive according to the present
system of numbering dwellings in Columbus, Georgia.

The above described property is designated as "Parcel 'C'" and is shown on a survey
entitled "Survey for Perrin C. and Catherine B. Trotter, Parcel C of Survey for Geo.
Trussell, Hugh McMath and Clara M. McMath, lying in Land Lot 50, 8th District,
Columbus, Muscogee County, Georgia" prepared by Faircloth & Associates under date of
October 11, 1986 and recorded in Plat Book 99, folio 93 in the office of the Clerk of the
Superior Court of Muscogee County, Georgia.

*(right margin, rotated text)* 92 FEB 19 P 4:25

*(right margin, rotated text)* FILED FOR RECORD M. LINDA PIERCE, CLERK S.C.M.C. GA.

JUN 1 1 1997
MODIFICATION AGREEMENT
See Deed Book 4708
Folio 241
6-24-97

GEORGIA INTANGIBLE TAX PAID
\$    319.50
DATE    2/19/92   ___
TAX COMMISSIONER
MUSCOGEE COUNTY

вк 3537 рс 124

The powers and agency hereby granted are coupled with an interest and are irrevocable by death or otherwise and are granted as cumulative to the remedies for collection of the debt provided by law, and the powers herein may be executed after the death of the maker and the land sold as the land of the deceased.

The Grantor, after any foreclosure of the land, agrees that possession thereof will be promptly surrendered to the purchaser at the sale and the Grantor and any person claiming under Grantor or occupying the land at the time of the foreclosure shall ipso facto become tenants at sufferance and shall forthwith deliver possession to the purchaser at the sale or be summarily dispossessed, in accordance with the provisions of law applicable to tenants holding over.

This deed and any evidence of the debt shall be deemed and construed to be contracts executed and to be performed in Georgia.

Grantor knowingly and voluntarily waives any right to notice or hearing, judicial or otherwise, that may exist under the laws or Constitution of the State of Georgia or of the United States with respect to the sale of property conveyed herein upon default, except as otherwise set forth herein.

IN WITNESS WHEREOF, Grantor has hereunto set their hand and seal the day and year first above written.

_____ (L.S.)
CHARLES W. MCDANIEL

_____ (L.S.)
LESLIE L. MCDANIEL

_____ (L.S.)

Signed, sealed and delivered
in the presence of:

_____
Notary Public

J. B. VAUGHT
—NOTARY PUBLIC—
MUSCOGEE COUNTY, GA
—OFFICIAL SEAL—
My Commission Expires March 20, 1995

°K 3 5 ° 7  ° 1 2 5

## ADJUSTABLE RATE RIDER
(1 Year Treasury Index—Rate Caps—Fixed Rate Conversion Option)

THIS ADJUSTABLE RATE RIDER is made this   13th   day of   February   , 19 92   , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
TRUST COMPANY BANK OF COLUMBUS, N.A.

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:
2627 Meadowview Drive, Columbus, Georgia 31906

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY. THE NOTE ALSO CONTAINS THE OPTION TO CONVERT THE ADJUSTABLE RATE TO A FIXED RATE.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

### A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of   8.75   %. The Note provides for changes in the adjustable interest rate and the monthly payments, as follows:

### 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

#### (A) Change Dates
The adjustable interest rate I will pay may change on the first day of   March   , 19 97   , and on that day every 12th month thereafter. Each date on which my adjustable interest rate could change is called a "Change Date."

#### (B) The Index
Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of 1 year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."   The Current Index as of this date is 4.23%
If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

#### (C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding two and three fourths   percentage points (   2.75   %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.
The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

#### (D) Limits on Interest Rate Changes
The interest rate I am required to pay at the first Change Date will not be greater than   10.75   % or less than   6.75   %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than   two   percentage point(s) (   2   %) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than   13.75   %, which is called the "Maximum Rate".

#### (E) Effective Date of Changes
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

#### (F) Notice of Changes
The Note Holder will deliver or mail to me a notice of any changes in my adjustable interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

### B. FIXED INTEREST RATE OPTION
The Note provides for the Borrower's option to convert from an adjustable interest rate with interest rate limits to a fixed interest rate, as follows:

### 5. FIXED INTEREST RATE CONVERSION OPTION

#### (A) Option to Convert to Fixed Rate
I have a Conversion Option that I can exercise unless I am in default or this Section 5(A) will not permit me to do so. The "Conversion Option" is my option to convert the interest rate I am required to pay by this Note from an adjustable rate with interest rate limits to the fixed rate calculated under Section 5(B) below.
The conversion can only take place on a date(s) specified by the Note Holder during the period beginning on the first Change Date and ending on the fifth Change Date. Each date on which my adjustable interest rate can convert to the new fixed rate is called the "Conversion Date."

MULTISTATE CONVERTIBLE ADJUSTABLE RATE RIDER—Single Family—1 Year Treasury Index-Fannie Mae Uniform Instrument   Form 3118 1/89
⊕-848A (8912)   VMP MORTGAGE FORMS • (313)293-8100 • (800)521-7291

B. 3537   p. 126

If I want to exercise the Conversion Option, I must first meet certain conditions. Those conditions are that: (i) I must give the Note Holder notice that I want to do so; (ii) on the Conversion Date, I must not be in default under the Note or the Security Instrument; (iii) by a date specified by the Note Holder, I must pay the Note Holder a conversion fee of U.S. $ 250.00 ; and (iv) I must sign and give the Note Holder any documents the Note Holder requires to effect the conversion.

**(B) Calculation of Fixed Rate**

My new, fixed interest rate will be equal to the Federal National Mortgage Association's required net yield as of a date and time of day specified by the Note Holder for (i) if the original term of this Note is greater than 15 years, 30-year fixed rate mortgages covered by applicable 60-day mandatory delivery commitments, plus five-eighths of one percentage point (0.625%), rounded to the nearest one-eighth of one percentage point (0.125%), or (ii) if the original term of this Note is 15 years or less, 15-year fixed rate mortgages covered by applicable 60-day mandatory delivery commitments, plus five-eighths of one percentage point (0.625%), rounded to the nearest one-eighth of one percentage point (0.125%). If this required net yield cannot be determined because the applicable commitments are not available, the Note Holder will determine my interest rate by using comparable information. My new rate calculated under this Section 5(B) will not be greater than the Maximum Rate stated in Section 4(D) above.

**(C) New Payment Amount and Effective Date**

If I choose to exercise the Conversion Option, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the unpaid principal I am expected to owe on the Conversion Date in full on the Maturity Date at my new fixed interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment. Beginning with my first monthly payment after the Conversion Date, I will pay the new amount as my monthly payment until the Maturity Date.

**C. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1. Until Borrower exercises the Conversion Option under the conditions stated in Section B of this Adjustable Rate Rider, Uniform Covenant 17 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2. If Borrower exercises the Conversion Option under the conditions stated in Section B of this Adjustable Rate Rider, the amendment to Uniform Covenant 17 of the Security Instrument contained in Section C 1 above shall then cease to be in effect, and the provisions of Uniform Covenant 17 of the Security Instrument shall instead be in effect, as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

CHARLES W. MCDANIEL                     (Seal)
                                        Borrower

LESLIE L. MCDANIEL                      (Seal)
                                        Borrower

_____        (Seal)
                                        Borrower

FILED        RECORDED                   (Seal)
                                        Borrower

FEB 1 9 '92      FEB 8 0 1992