UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

In the Matter of:           :     Chapter 11
                            :
TOM'S FOODS INC.,           :
                            :
          Debtor            :     Case No. 05-40683 RFH
                            :

**MEMORANDUM OPINION**

Tom's Foods Inc., the Chapter 11 debtor-in-possession, filed on September 16, 2005, an expedited motion for authorization to schedule an auction for the sale of substantially all of Debtor's assets free and clear of all liens, claims, and interest. The motion also requests approval of certain bidding procedures which will govern the auction.[1]

The Official Committee of Unsecured Creditors and the Bank of New York as Indenture Trustee filed objections to Debtor's motion.[2] A hearing on Debtor's motion was held on September 21, 2005. The Court, having considered the

---

[1] Debtor's counsel at the September 21, 2005, hearing announced two minor changes to the proposed procedures. One change moves up the negotiating times. The other changes the site of the auction from Atlanta to New York City.

[2] The Bank of New York's objection also contained a cross-motion for an order converting Debtor's Chapter 11 case to Chapter 7, or, in the alternative, for the appointment of a Chapter 11 trustee. The Court will schedule a hearing on the cross-motion for October 19, 2005.

evidence presented and the arguments of counsel, now publishes this memorandum opinion.

Debtor is a leading regional snack food manufacturer. Debtor has some 1,400 employees. Some 800 of Tom's franchisees employ an additional 2,000 employees. Debtor filed a petition under Chapter 11 of the Bankruptcy Code on April 6, 2005. Debtor obtained $22,000,000 in postpetition credit from the DIP lenders. Debtor is in default on this obligation. Debtor owes a prepetition obligation of $70,000,000 to the Bank of New York. This obligation is secured by liens on most of Debtor's real property, equipment, and intellectual property.

Debtor initially intended to reorganize and to continue in business. At the hearing on September 21st, Debtor's president, Roland G. Divin and its chief restructuring officer, Eugene Davis testified that this is no longer possible. Mr. Divin testified that Debtor will run out of cash by the end of October. Mr. Divin testified that Debtor is losing money and that there is no additional financing available to Debtor. Mr. Divin testified that competitors are stealing Debtor's customers and that key employees are leaving. Mr. Davis testified that Debtor cannot survive until November 5, 2005. Mr. Divin and Mr. Davis testified that a sale of the business as a going concern is now the best option. The testimony of Mr. Divin and Mr. Davis was the only evidence presented to the Court on Debtor's present financial condition. The Court therefore accepts the evidence as a showing of Debtor's present financial condition.

Debtor proposes to hold an auction in New York City on October 17, 2005. Debtor asks the Court to schedule a hearing on October 19th to approve a sale to the successful bidder.

The DIP lenders have agreed to be a "stalking horse bidder". The DIP lenders are owed $22,000,000 for postpetition credit extended by them to Debtor. At the auction, the DIP lenders will offer a credit bid of $15,000,000. The DIP lenders will offer to waive some portion of the remainder of their claims. The Dip lenders will offer to assume certain trade accounts, executory contracts, and unpaid payroll expenses. Most of Debtor's employees would keep their jobs. The DIP lenders will offer to provide not less than $2,300,000 to pay certain administrative expenses of Debtor's bankruptcy estate. The Dip lenders would not receive any break up fees or reimbursement of expenses.

Section 363(b)(1) of the Bankruptcy Code provides that "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 .U.S.C.A. § 363(b)(1) (West 2004).

Debtor, as the Chapter 11 debtor-in-possession, has the rights and powers of a trustee. 11 U.S.C.A. § 1107(a) (West 2004).

<u>Collier on Bankruptcy</u> states in part:

### [f]—Standard for Approval of Sale.

In determining whether to approve a proposed sale under section 363, courts generally apply standards that, although

> stated variously ways, represent essentially a business judgment test. Some courts have described the standard as one of "good faith" or of whether the transaction is "fair and equitable." Others question whether the sale is "in the best interest of the estate." In the context of sales of substantially all of the assets of the estate, some courts have required that the price to be paid be "fair and reasonable."

3 Collier on Bankruptcy, ¶ 363.02 [1] [f] (15th ed. rev. 2005).

Collier also states:

> **[4]—Sale of Substantial Part of the Estate.**
>
> . . .
>
> There has been disagreement historically on the issue of whether and under what circumstances a chapter 11 debtor may sell substantial assets under section 363. It is now generally accepted that section 363 allows such sales in chapter 11, provided, however that the sale proponent demonstrates a good, sound business justification for conducting the sale prior to confirmation (other than appeasement of the loudest creditor), that there has been adequate and reasonable notice of the sale, that the sale has been proposed in good faith, and that the purchase price is fair and reasonable. These factors are considered to assure that the interests of all parties in interest are protected and that the sale is not for an illegitimate purpose. Attempts to determine plan issues in connection with the sale will be improper and should result in a denial of the relief requested.

3 <u>Collier on Bankruptcy</u>, ¶ 363.02 [4] (15th ed. rev. 2005).

      The business judgment rule is a presumption that corporate decision makers acted on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the corporation. Courts are loath to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence. <u>In re Global Crossing, LTD</u>, 295 B.R. 720, 743 (Bankr. S.D. N.Y. 2003).

      The Creditors Committee and the Bank of New York object to the proposed auction basically on two grounds. First, they contend the proposed auction date would not afford sufficient time to identify potential bidders. Second, they contend the stalking horse bid is much lower than Debtor's liquidation value.

      The United States Trustee acknowledges that Debtor must act soon and notes that the proposed auction is moving quickly. The United States Trustee did not object to Debtor's motion.

      The Court has some concerns with the fast pace of the proposed auction and with some of the procedures governing the auction. The Court notes, however, that Debtor will soon run out of cash and cannot obtain additional financing. The Court notes that the stalking horse bid is simply an opening bid. The final and successful bid may be much higher.

      The Court also notes that Debtor is, at this point, asking for authority to

conduct an auction and for approval of certain bidding procedures. After the auction, Debtor must return to the Court for approval of the sale. The Court, at that time, will inquire into the price and terms of the sale to ensure that the price is fair and reasonable. The Court will also make a decision whether the interests of all parties in interest are protected.

The Court is persuaded that Debtor's motion should be granted in so far as it seeks authority to schedule an auction and for approval of ceratin bidding procedures.

An order in accordance with this memorandum opinion will be entered this date.

Dated this 23rd day of September, 2005.

_____
ROBERT F. HERSHNER, JR.
Chief Judge
United States Bankruptcy Court