IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA

| | | |
|---|---|---|
| In re: | * | CHAPTER 13 |
| | * | |
| LESLIE McDANIEL, | * | CASE NO. 12-41231-JTL |
| | * | |
| Debtor, | * | JUDGE LANEY |

| | | |
|---|---|---|
| LESLIE McDANIEL, Individually and as | * | |
| Representative of her Bankruptcy Estate, | * | |
| | * | |
| Plaintiff, | * | ADVERSARY PROCEEDING |
| | * | |
| vs. | * | NO. 13-04013 |
| | * | |
| SUNTRUST BANK, SUNTRUST | * | |
| MORTGAGE, INC., McCALLA | * | |
| RAYMER, LLC, FOXFIRE ACRES, INC., | * | |
| THE UNITED STATES by and through the | * | |
| THE INTERNAL REVENUE SERVICE, | * | |
| THE STATE OF GEORGIA (Represented | * | |
| by the DEPARTMENT OF REVENUE), THE | * | |
| GROGAN GROUP, LLC d/b/a GROGAN & | * | |
| GROGAN, and THE COLUMBUS | * | |
| CONSOLIDATED GOVERNMENT, | * | |
| | * | |
| Defendants. | * | |

**Affidavit in Opposition to Motion for Protective Order and Motion to Quash**

Comes now Leslie McDaniel, Plaintiff and Debtor, and submits the within affidavit of her counsel in opposition to Motion for Protective Order and Motion to Quash, filed by the Columbus Consolidated Government.

**Preliminary Note: the email conversations between and among counsel concerning the proposed depositions of the Columbus Consolidated Government, the Mayor and the Tax Commissioner are attached as Exhibits "1" to "31" inclusive. They are incorporated by reference.**

1. I have been in law practice for 37 years and in bankruptcy law practice, almost exclusively, for 32 years. My law practice includes representation of real estate investors and

homeowners in default on security deeds.  I have observed over the last 5 years a marked trend in real estate loan defaults on both investment and residential real estate by which the debtor would default and the lender would not foreclose or commence a foreclosure and not complete it. This is a trend that is growing.  Borrowers generally move out of the house,  or abandon it from rental, on default but when the lender fails to foreclose the borrower, lacking the financial ability to pay for upkeep or property taxes, encounters unpaid upkeep levies by local governing authorities and back property tax levies. Lenders refuse gratuitous and voluntary deeds in lieu of foreclosure and the property goes derelict sometimes for years.  Such properties are commonly referred to as "zombie foreclosures". There are over 370,000 Goggle search "hits" for that term.

      2.  Sometime prior to the filing of the within adversary proceeding, I spoke with Mayor Teresa Tomlinson ("Mayor") about the "zombie foreclosure" problem, and my desire to find a method to protect clients from taxation and code enforcement on such properties and put them back into the home market for residential uses, by attempting to sell them through bankruptcy sales in consumer cases such as are commonly done in business cases.

      3.  She encouraged me to pursue this and gave me contact numbers with the city, including Clifton Faye,  the City Attorney with whom I spoke. I also spoke with one program head for a program which acquires derelict properties.  All were encouraging.

      4. Among my clients was Ms. Leslie McDaniel (herein "Debtor"), former daughter in law of sitting City Councilor  C.E. "Red" McDaniel, and the owner of a property on Meadowbrook ("the property") which is a "zombie foreclosure".  It has been vacant and derelict for 3 years because of the inability or unwillingness of the lender to deal with a 2010 aborted foreclosure. She has several hundred thousand in tax liens on the property, all imposed on her through no fault of her own.  She lacked and lacked the resources to maintain and pay taxes on the property.

      5. After advising her that I wanted her case to be a test case for a bankruptcy resolution of the "zombie foreclosure" problem and relieve her tax debt and on her full understanding of that, I filed a Chapter 13 for her.  Subsequently, I brought the instant adversary proceeding  against all parties having or claiming a lien in the property seeking authorization to conduct a sale of the property under 11 USC Section 363 (f). Among the secured  creditors, and therefore lien holders, was the Columbus Consolidated Government ("City").  This lien is first priority and not subject to dispute. It can be treated under 11 USC Section 363 (f) because it will be paid.

      6.  I listed Steve Gunby ("City Counsel") as a courtesy notice party on the adversary proceeding, since I knew that he represented the City  and he contacted me, by email.   I explained  that no relief was sought against Columbus, other than the sale of the property, and I would like a consent to sell the property from the City.  I also contacted other taxing authorities and asked the same.  He emailed  me on October 31, 2013, that he would check with his client and get back with me. Exhibit 5.

      7.  I heard nothing further from City Counsel until I received the Answer and Motion to Dismiss filed by the City.  After that I had one telephone conference with him about bringing the

matter to resolution, but the City's position was that it needed to be dropped from the suit, which would have had the effect of defeating the sale.

8. These pleadings stated factually that it is unclear that the property was owned by the debtor, and asserted that the property might not be property of the estate, even though it has been assessed and is now assessed with property taxes, which it could only have been were it not the Debtor's property,. It also stated that a proceeding to sell was improper unless a specific sale had been identified and it's terms disclosed, something that would be practically impossible. These defenses went to the merits of the claim to sell the property against the City, and were not merely directed to insulating the city from other claims.

9. City Counsel sent several emails, Exhibit 1 and Exhibit 3, indicating that the City wanted to be dropped as a defendant. I called and again calls were not returned. I responding to those emails by emails, Exhibit 2 and Exhibit 4, stating that I didn't feel a sale of the property could be authorized unless the City were named as a party, but again that no relief was sought except sale of the property. I assured City Counsel that the City was a party only for the sale claim and that it would be paid as a lien claimant. Exhibit 2 and Exhibit 3.

10. I received no response to these emails until I received an email indicating that City Counsel would be available for a call on November 22, 2013, at 11 a.m. and that he would call me. See exhibits 11 and 12. This turned out to be a conference call with City Counsel, Counsel for lien holder and damages Defendants SunTrust Bank, and SunTrust Mortgage Company ("bank counsel") and counsel for damages defendants McCalla, Reymer, LLC, ("McCalla") Allan Snipes ("McCalla counsel") also with the same firm as City Counsel, who I learned was acting as co-counsel for McCalla.

11. Since this was such a surprising response from the city and so different from what I reasonably expected, I wanted to arrange a deposition of the City to ask, among other things, for it to explain it's position. Involved in this would be a general discussion of the "Zombie foreclosures." I brought this up as a topic of discussion during the conference call, and asked that I be supplied with convenient dates and times.

12. McCalla had engaged McCalla counsel and City Counsel, in the same firm as McCalla counsel, as counsel for the damage claim. McCalla had been sued in non bankruptcy Court on the theory that it had botched the foreclosure which is at the heart of this adversary proceeding and that litigation. This suit was asserted by Foxfire Acres, Inc. ("Foxfire") another potential claim holder to the property and defendant in this adversary proceeding.

13. McCalla, along with the foreclosing creditor, Bank, ambiguously took the position in the non bankruptcy suit that the foreclosure was complete and that the foreclosure bidder, Foxfire, should have accepted a deed tendered to him. If this were so Foxfire would have no claim in the non-bankruptcy action. The foreclosing creditor, Bank, took, but subsequently withdrew, that same position in the main case herein, after a sanction notice was served on it. This was by way of an objection to Confirmation of Debtor's chapter 13 plan and was recently withdrawn.

14. In its pleadings the City seemed to take the same position originally taken by McCalla and the Bank, a position which would have been in the Bank's and McCalla's best interest but hardly in the City's best interest since if the Debtor were not owner of the property the City could assess no taxes and would have no liens. This defense by the City was overruled on the pleadings, in a hearing last week.

15. As my effort to obtain voluntary depositions of the City were not successful. On November 22, 2013, later the day of the conference call, I served deposition notices for the City, the Mayor, and Lula Huff, the Tax Commissioner ("Commissioner"). Copies of these were attached to the City's Motion for Protective Order/Motion to Quash ("Motion").

16. I repeatedly offered to reschedule the depositions and asked for the City and the Witnesses to waive subpoena or consent for City Counsel to accept service of the subpoenas. Between November 22 and November 25, 2013, at least a half dozen phone calls were made and five emails, Exhibits 16, 17, 18, 19, and 20, were sent and none were answered. I received one call back from City Counsel's secretary that he was too busy to talk to me. Finally, I issued subpoenas and had them served, at my expense, by a process server, on the Mayor and the Commissioner. Appropriate witness fees were included and have not been returned. Copies of the subpoenas are also attached to the Motion.

17. I received an email, Ex.13, from City Counsel on November 25, 2012, the date the subpoenas were served, stating that he could see no urgency in taking the discovery.

18. When I responded to the effect that I disagreed and would not withdraw the notices, I then received an email, Ex. 22, from City Counsel, on November 27, 2013, asking the deposition notices be withdrawn, and stating that the depositions were improper since noticed prior to the Rule 16 scheduling order and that part of the description of the subject matter for which the depositions would be taken involved an undefined them, "zombie foreclosure". The full text of this email, attached, is repeated *verbatim* as follows:

> "Fife,
> This email is an attempt to resolve a discovery dispute and to avoid the necessity of filing a Motion for Protective Order or to Quash Subpoenas.
>
> Your subpoenas and notices for the depositions of Teresa Tomlinson and Lula Huff state that you want them to testify Monday, December 2, 2013. The parties to the case have not conferred about the discovery to be conducted as required by the applicable rules of bankruptcy procedure. As I have mentioned before, Columbus contends the depositions, notices and subpoenas are therefore premature and not authorized.
>
> The notices and subpoenas themselves presume that Teresa Tomlinson and/or Lula Huff have knowledge of statistics about housing in Columbus that you refer to as "zombie foreclosures" without defining that term. The notices and subpoenas are so vague it is impossible for the proposed witnesses to prepare or even understand what you are seeking particularly given the limited position of Columbus is the adversary proceeding.
>
> I am prepared to file a Motion for a Protective Order or to Quash but need to confirm

your position with respect to the depositions. Do you still insist on taking them?

Thanks. SGG"


19. I replied that I was.  On November 27, 2013,  I prepared and served Amended Deposition Notices for depositions after the Rule 16 scheduling order was to be entered and attached a detailed explanation fo what a "zombie foreclosure" is, even though I was sure that the City and the Witnesses understood the term.  I therefore dealt with each of the complaints about the depositions expressed by the City in this email.  These Amended Deposition Notices were attached to the City's Motion.

20.   I sent several other emails suggesting that we could reschedule or change the location of the depositions for the City's and the witnesses' convenience.  All went without response.

21.  Most specifically, I sent an email, Exhibit 30, on December 12, 2013, containing a good faith offer to resolve the dispute.  To summarize this email: *I offered to stipulate in the transcript that the deposition could not be used against the city other than concerning the sale, that I would take the exam where ever and when ever the City wished if we could do it by the end of the year, and that I would limit the deposition to 30 minutes per witness*.  The full text of that email as concerns discovery is as  follows:

"As to the depositions, these would be appropriate even if Columbus were not a party for the following reasons:

 **1.** I spoke with the Mayor about the "Zombie foreclosure" issue prior to filing the adversary and she encouraged me to pursue it and referred me to the City Attorney, and I spoke with him and at least one program based person, working in the housing area, who also encouraged me, and it is material to know how and why the change of heart occurred;
 2.The fact that the property was not foreclosed for three years is an element of the claims against  the Bank, the Mortgage Company, and McCalla and I am entitled to quiz them on how that problem impacts (Steve's client) Columbus;
 3. Both are knowledgeable about Columbus policy of continuing to tax and send Environmental Court notices to the nominal owner's of Zombies rather than scheduling for immediate tax sale, and that also is probative on the claims against the Bank, the Mortgage company, and McCalla.

Since the City is now insulated from any recovery we might make against anyone, I do not see why Steve, acting for Columbus, should even be at the depositions, although Steve or Alan, acting for McCalla, probably should be and could bill them.  To the extent Columbus feels it needs counsel, the City attorney could satisfy that function.  Columbus should have no fees for these depositions.

**In order to avoid a discovery dispute, I propose, in good faith,  as follows:
1.  We will stipulate at the beginning of each deposition that the testimony cannot**

**be used against Columbus in any way, other than as relates to any objection they may make to the sale, when noticed up:**
**2.. We will take the depositions at the deponent's offices or any other place of the witness' choice;**
**3. We will agree to limit the examination to 30 minutes, exclusive of objections and counsel colloquies, for each witness, assuming the document requests to the non-party witnesses are responded;**
**4. We will agree to adjourn and reschedule depositions to a more convenient day and time, provided they are done by the end of the year.**

I do not believe that a non-specious motion for protective order could be made to the depositions as limited above." **(Emphasis added)**


22. There was never any response to this email until the Motion, which is in essence that the City and the Witnesses cannot be bothered with giving deposition testimony, in any way and in any fashion, and with any limitation.

23. Therefore the Debtor did not have notice of the Motion, or even a suggestion it would be filed, until less than 24 hours prior to the noticed deposition, noticed for December 17, 2013, after a Court reporter had been engaged, and after the notices had been pending since November 22, 2013, over 3 weeks earlier.

24. I believe that testimony of the witnesses would be required, even if the City were not a party, in order to establish elements of claims against City Counsel's other client McCalla and the Bank for the following reasons:
    (a) Debtor is entitled to test what the litigation motive was in filing a Motion to Dismiss a complaint directed to getting their taxes paid;
    (b) Debtor is entitled to establish from the Mayor and the Commissioner the effect on a Debtor of being a victim of an aborted foreclosure ( environmental enforcement action and tax claims);
    (c) Debtor is entitled to discuss with the Mayor and the Commissioner the severity of the problem in Columbus.

25. I do not believe this evidence could be obtained from other sources at all or without extraordinary effort.

Respectfully Submitted, this 19th Day of December, 2013,

/s/ Fife M. Whiteside

_____
Fife M. Whiteside
Bar No.756025
Box 5383, Columbus, GA
31906
whitesidef@mindspring.com

    PERSONALLY APPEARED BEFORE ME THE UNDERSIGNED AUTHORITY, THE AFFIANT, WHO BEING DULY SWORN, DID SWEAR AND ATTEST THE FOLLOWING.
    THIS 19TH DAY OF DECEMBER, 2013

/s/ Donna Whitmore

_____
NOTARY PUBLIC

(SEAL)