## IN THE UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF GEORGIA

| | | |
|---|---|---|
| In re: | * | CHAPTER 13 |
| | * | |
| LESLIE McDANIEL, | * | CASE NO. 12-41231-JTL |
| | * | |
| Debtor, | * | JUDGE LANEY |

| | | |
|---|---|---|
| LESLIE McDANIEL, Individually and as | * | |
| Representative of her Bankruptcy Estate, | * | |
| | * | |
| Plaintiff, | * | ADVERSARY PROCEEDING |
| | * | |
| vs. | * | NO. 13-04013 |
| | * | |
| SUNTRUST BANK, SUNTRUST | * | |
| MORTGAGE, INC., McCALLA | * | |
| RAYMER, LLC, FOXFIRE ACRES, INC., | * | |
| THE UNITED STATES by and through the | * | |
| THE INTERNAL REVENUE SERVICE, | * | |
| THE STATE OF GEORGIA (Represented | * | |
| by the DEPARTMENT OF REVENUE), THE | * | |
| GROGAN GROUP, LLC d/b/a GROGAN & | * | |
| GROGAN, and THE COLUMBUS | * | |
| CONSOLIDATED GOVERNMENT, | * | |
| | * | |
| Defendants. | * | |

## FIRST AMENDED  COMPLAINT FOR DECLARATORY JUDGMENT AND LIEN AVOIDANCE, EQUITABLE SUBORDINATION, SALE FREE AND CLEAR OF LIENS, AND DAMAGES UNDER GEORGIA STATE LAW

COMES NOW, **Leslie McDaniel**, herein **"Debtor"** or **"Plaintiff"**[1], and brings the within

First Amended Complaint for Declaratory Judgment and Lien Avoidance, Equitable

Subordination, Sale Free and Clear of Liens, and Damages Under Georgia State Law, *pursuant*

---

[1]This complaint is brought by Debtor on her own behalf to the extent of her exemptions, and on behalf of her estate to the benefit of creditors.  This and all footnotes herein are for explanation and are not allegations: No denial is required.

*to Order of the Court*[2] herein "Complaint", against **SunTrust Bank**, herein **"SunTrust"**, **SunTrust Mortgage, Inc.**, herein **"SunTrust Mortgage"**, **McCalla Raymer, LLC**, herein **"McCalla"**, **Foxfire Acres, Inc.**, herein **"Foxfire"**, The United States by and through the **Internal Revenue Service**, herein **"IRS"**, the **State of Georgia** (represented by the Department of Revenue), herein **"DOR"**, **The Grogan Group, LLC d/b/a Grogan and Grogan**, herein **"Grogan"**, and the **Columbus Consolidated Government**, herein **"Columbus"**, and says the following.

PRELIMINARY NOTE

This First Amended Complaint ("amended complaint") is an amendment to an original complaint filed October 17, 2013, which is herein referred to as "original complaint."  It is filed pursuant to Court Order of January 15, 2014 [Docket No. 82].  One new exhibit is added and the exhibits to the original complaint are incorporated by reference herein by the same numbers and without additional duplication. The original paragraph numbering from the original complaint  is preserved to the greatest extent possible. Added paragraphs, not in the original complaint,  are numbered sequentially with the original paragraph with an additional, lettered paragraph designation.  *Additional or changed language within a paragraph is published in bold and italics, as is the entire language in any added paragraph, in the fashion of this sentence within this Preliminary Note.*  This Preliminary Note is not intended to be an allegation of the amended complaint and is for explanation only.  It requires no response.

JURISDICTION

1.

This Court has jurisdiction pursuant to 28 U.S.C. § 1334, and the standing order of reference.

---

[2]*Plaintiff filed a Motion for Leave to Amend (with an original proposed Amendment) on January 3, 2014, and the Court took up the Motion for hearing.  It entered an Order [Docket No. 82] authorizing the amendment but with directions as to how the original complaint should be amended.  The originally proposed Amendment is withdrawn and this is substituted.*

2.

The matters set forth herein*, in Counts One, Three through Six, inclusive, Eight and Ten,*  are such as to make it a core proceeding, *with respect to those counts,*  which the Court may hear, and determine, without reference to the District Court.  *Other matters in other Counts are not "core proceeding" matters and are subject to reference to the District Court, absent consent of the parties.*

3.

The subject matter of the suit involves mixed claims under bankruptcy law and Georgia State law, so that the suit may be subject to by bifurcation and reference to the District Court as to *those* claims, *so as to observe the jurisdictional limits imposed in* <u>Stern v. Marshall</u>*. Specifically, the claims set forth in Count Seven (a "non-core" proceeding claim), Count Eight (even though a "Core Proceeding" claim) and Count Nine ( a "non-core" proceeding claim) are outside the jurisdiction of the Bankruptcy Court, as an Article Three Court, and must be referred to the District Court, to satisfy the requirements of* <u>Stern v. Marshall.</u>

<u>PARTIES</u>

4.

Debtor, Leslie McDaniel, is a debtor in this voluntary bankruptcy case brought under Chapter 13 of Title 11, filed December 21, 2012, herein "date of filing", and is in pre-confirmation status.

5.

SunTrust is a Virginia banking corporation, having offices, among other places, in Columbus, Georgia.

6.

SunTrust Mortgage is a Georgia corporation doing business in Columbus, Georgia, at 6310 Bradley Park Drive, Columbus, Georgia.

7.

McCalla Raymer, LLC is a Georgia limited liability corporation engaged in the practice of law in the State of Georgia, and having its principal place of business in Roswell, Georgia.

8.

Foxfire Acres, Inc., is a Georgia Corporation with principal place of business in Columbus, Georgia.

9.

The United States of American by and through the IRS is the sovereign government of this country and is represented in interest by its taxing authority, the Internal Revenue Service.

10.

The State of Georgia, through the Department of Revenue, is a sovereign government within the United States and is represented by its principal taxing authority, the Department of Revenue.

11.

Columbus is the municipal government for the municipality in which the property lies.

12.

Grogan is an ostensible Georgia Limited Liability Company, although not registered, and it is the corporate entity for law practice, which represented Debtor and holds a judgment for fees which is avoidable as impairing exemptions, under 11 U.S.C. § 522(f).

PRE-PETITION BACKGROUND

13.

Leslie L. McDaniel, the Debtor herein, and Charles W. McDaniel ("Mr. McDaniel") are the co-makers of a promissory note dated February 13, 1992 (the "Note"), evidencing a loan in the original principal amount of One Hundred Six Thousand Four Hundred Dollars ($106,400.00) (the "Loan"), in favor of Trust Company Bank of Columbus, N.A. ("Trust Company Bank").

14.

The Note is secured by a first lien Deed to Secure Debt, executed by Leslie L. McDaniel and Mr. McDaniel in favor of Trust Company Bank, also dated February 13, 1992, encumbering the Debtor's purported sole asset which is described in the Security Deed (the "Property") and recorded in Deed Book 3537, Pages 122-126, Muscogee County, Georgia Real Property Records (the "Security Deed"). A true and correct copy of the Security Deed is attached hereto as **Exhibit "1"** and incorporated by reference herein.

15.

The Loan was last modified by that certain Security Deed and Note Modification Agreement, secured by the Property and dated May 1, 1997, recorded in Deed Book 4708, Pages 241-244, Muscogee County, Georgia Real Property Records (the "Loan Modification").  A true and correct copy of the Loan Modification is attached hereto as **Exhibit "2"** and incorporated by reference herein.

16.

SunTrust bank, as successor by merger to Trust Company Bank, is the holder of the Note and Security Deed as last modified by the Loan Modification.

17.

SunTrust Mortgage was the servicer of the Loan.

18.

The Debtor and Mr. McDaniel were married at the time of the execution of Exhibit "1", but subsequently separated and obtained a divorce.  They remarried and then obtained a second divorce by decree of the Superior Court of Muscogee County, on April 11, 2005, and a copy of that Decree is attached hereto and incorporated by reference as **Exhibit "3"**.  It (and the property settlement agreement attached) are herein referred to as "Divorce Decree".

19.

Pursuant to the Divorce Decree, at "Equitable Division", Paragraph 5, Debtor agreed to assume the obligation to pay SunTrust, the property having been previously deeded by Mr. McDaniel to Debtor (as a result of the first divorce), by Deed recorded at Muscogee County Superior Court Land Deed Book 6085, at Page 146, and a true and accurate copy of that Deed is attached hereto and incorporated by reference as **Exhibit "4"**.

20.

Pursuant to the divorce decree, at "Equitable Division", Paragraph 5, the Debtor was to assume responsibility for payments on the Note and Security Deed, as last modified by the Loan Modification.

21.

Debtor defaulted under the Note and Security Deed (as last modified by the Loan Modification).

22.

The obligation secured by the Note and Security Deed, as last modified by the Loan Modification, was due and payable upon demand by SunTrust, as provided in the terms of these security documents.

23.

Debtor failed to cure the default or reinstate the Loan following such demand.

24.

Multiple demands were made through McCalla on Debtor by SunTrust or SunTrust Mortgage.  These were by letters dated January 21, 2010, January 25, 2010, February 23, 2010, September 23, 2010, and September 27, 2010.  This list is not meant to be exclusive and Debtor believes there were other demands.

25.

Because of the default and the failure to reinstate the Loan following demand, a foreclosure was commenced by SunTrust Mortgage, by publication of a notice of foreclosure ("Foreclosure Notice") in the Columbus Ledger-Enquirer in the weeks of October 4, October 11, October 18, and October 25, 2010.

26.

The Foreclosure Notices, a true and accurate copy of one of which is attached hereto and incorporated herein as **Exhibit "5"**, contained the following language:

> "The entity that has full authority to negotiate, amend, and modify all terms of the mortgage with the debtor is SunTrust Mortgage, Inc., 1001 Sims Avenue, Richmond, Virginia, 23224, 866-384-0903."

The foreclosure ad was predicated on the statement and allegation contained therein that SunTrust Mortgage was the proper foreclosing creditor.

27.

SunTrust Bank, however, was the actual holder of the Security Deed at the time the foreclosure advertisements were commenced, and not SunTrust Mortgage.

28.

On November 2, 2010, Defendant Foxfire, through an agent, Glenn K. Albright, III, Corporate Vice-President ("Mr. Albright"), appeared at the Courthouse steps, Government

Center, Columbus, Muscogee County, Georgia, the place for which the foreclosure sales were
advertised, and the place where foreclosure sales were to be held in accordance to law.

29.

The foreclosure was conducted by an employee, member, or contract party for McCalla
Raymer, who appeared at the Courthouse steps on November 2, 2010, and began the foreclosure
process by publicly knocking off the sale to any member of the public, the property being 2627
Meadowview Drive, Columbus, Muscogee County, Georgia, for sale to this highest bidder
pursuant to the power of sale contained in the Security Deed held by SunTrust Bank in reference
in the foreclosure advertisement, as being owned by SunTrust Mortgage, Inc.

30.

Foxfire, through Albright, bid against other interested persons, and Foxfire was the
highest bidder at the public foreclosure sale on November 2, 2010.

31.

Foxfire paid $126,000.00 ("Bid Price") to McCalla Raymer, for SunTrust or SunTrust
Mortgage, and this payment was accepted.

32.

Under Georgia law, O.C.G.A. § 44-14-160, SunTrust or SunTrust Mortgage was under an
obligation to record the foreclosure Deed, as is set as follows:

> "Within 90 days of a foreclosure sale, **all deeds under power shall be
> recorded by the holder of a deed to secure debt** or a mortgage with the
> clerk of the superior court of the county or counties in which the
> foreclosed property is located. The clerk shall write in the margin of the
> page where the deed to secure debt or mortgage foreclosed upon is
> recorded the word "foreclosed" and the deed book and page number on
> which is recorded the deed under power conveying the real property;
> provided, however, that, in counties where the clerk keeps the records
> affecting real estate on microfilm, the notation provided for in this Code
> section shall be made in the same manner in the index or other place where
> the clerk records transfers and cancellations of deeds to secure debt."

Id. **Emphasis added.**

33.

Although SunTrust Mortgage had accepted the funds paid over, neither SunTrust
Mortgage nor SunTrust caused a Foreclosure Deed to be recorded.

34.

Since SunTrust Mortgage, the entity which advertised and attempted to foreclosure the property, did not own the Security Deed at the time of the foreclosure, the foreclosure was void.

35.

Although Foxfire knew that the Security Deed had not been assigned to SunTrust Mortgage prior to the foreclosure, it reasonably assumed that the assignment would be, since it is required by law, and only after the foreclosure sale, through a title examination, formed in order to facilitate Foxfire's obtaining a loan in the amount of the bid proceeds which he has already paid over to McCalla Raymer, did Foxfire discover the assignment had not been made.  A true and accurate copy of the abstractor's letter to McCalla pointing out the defect in the foreclosure is attached as **Exhibit "6"**.

36.

Although McCalla Raymer forwarded an unrecorded foreclosure Deed to Foxfire, Foxfire refused to accept it, because Foxfire was on notice of the defect in the mortgage, and knew that the foreclosure Deed, if recorded, would be void itself, and would not convey good title.

37.

Indeed, after the post-foreclosure title exam, Foxfire was unable to obtain an assurance of insurable title and therefore could not borrow money against the property to repay itself for the foreclosure proceeds.

38.

Foxfire made several demands, informally and formal, on McCalla, SunTrust, and SunTrust Mortgage, trying to obtain a refund of the "Bid Price" $126,000.00 paid by Foxfire to McCalla either for SunTrust or for SunTrust Mortgage.

39.

McCalla, SunTrust, and SunTrust Mortgage, although they knew the foreclosure sale was void because of the failure to record the SunTrust held mortgage to SunTrust Mortgage prior to the foreclosure sale, refused to refund the foreclosure proceeds to Foxfire.

40.

The payment by Foxfire coupled with the failure to promptly rescind the foreclosure under  *O.C.G.A. § 9-13-172.1.* resulted in the satisfaction of the debt evidenced by the Note.

41.

Subsequently, Foxfire brought suit against SunTrust Mortgage and McCalla Raymer, and a true and accurate copy of the Complaint *(herein "state court Complaint")* filed against them is attached hereto and incorporated by reference as **Exhibit "7"**.[3]   Foxfire's **state court** Complaint, at Paragraphs 10, 11, 12, and 13, recited the facts of the foreclosure sale, as well as the tender of a foreclosure Deed, in contravention of Georgia law, quoted above.

42.

However, SunTrust, although in a position to know what its agents did, denied the allegations of each paragraph of the Plaintiff's Complaint, therefore denying that the foreclosure was *incomplete*.[4]   A true and accurate copy of SunTrust Mortgage's Answer is attached hereto and incorporated by reference as **Exhibit "8"**.[5]

43.

In the litigation that follows, in order to avoid any obligation to repay the sales price to Foxfire, as is set forth more fully below, SunTrust Mortgage ambiguously took the position that the foreclosure *had been completed,*[6] until August 27, 2013, when it clarified its position that the foreclosure was not complete*, by refunding the Foxfire bid.*

---

[3]The allegations of the Complaint are not incorporated by reference and do not require response.

[4]The allegations of this paragraph and the next have been altered to correct the prior assertion that SunTrust and SunTrust Mortgage denied that the forecloure was "complete".

[5]See FN 3.

[6]See FN 4.

44.

At the time that the foreclosure was attempted, there were multiple subordinate tax liens on the property detailed as follows:

| Claimant/Interest Holder | Nature of Claim / Treatment on Sale |
| --- | --- |
| United State of America (by and through the IRS) | Federal tax lien for various years - to be paid according to priorities established of record |
| State of Georgia (represented by the Georgia Department of Revenue) | State tax liens for various years - to be paid according to priorities established of record |
| SunTrust, SunTrust Mortgage | Security Deed liens to secured disputed claims - To be paid as ordered by the Court |

45.

There are now additional liens or claims to the property.  These are detailed as follows:

| Claimant/Interest Holder | Nature of Claim |
| --- | --- |
| Foxfire | Claim related to failed foreclosure - to be paid nothing on sale |
| Grogan | Judgment lien (avoidable under § 522(f) - to be paid nothing on sale |
| Columbus | Tax lien for unpaid taxes in 2011, 2012 and 2013 - to be paid in full on sale |

.

46.

On best information and belief, the taxing authorities were properly notified of the foreclosure, so that since the foreclosure was complete, at least to the extent of the foreclosure, the taxing authorities liens would have been extinguished on the property.

47.

The value of the property exceeded the value of the debt (represented by the Note) owed to SunTrust or SunTrust Mortgage, by at least seven thousand dollars ($7,000.00), even in a liquidation, foreclosure context, and there was a surplus, by at least that amount.

48.

None of SunTrust, SunTrust Mortgage, or McCalla took an action to either refund Foxfire its money and re-call the foreclosure, or record a foreclosure deed, and pay over the surplus to Debtor.

49.

Nothing has happened with the property since November 2, 2010, almost three years prior to the filing of this Adversary Proceeding.

50.

The property became what is commonly referred to as a "zombie foreclosure", with no action being taken by the lender, SunTrust or SunTrust Mortgage, to keep it up, maintain the premises, or satisfy city ordinances pertaining to grounds maintenance, or to complete a foreclosure.

51.

The Debtor, whose **status as an owner had been denied by SunTrust, SunTrust Mortgage, and McCalla**, ever since the attempted foreclosure, because of her financial circumstances, is unable to keep the property up, has neither kept the property up nor maintained the grounds.  She has been subject of legal action by the City of Columbus.  See attached **Exhibit "9"**, incorporated by reference.

52.

The value of the property has deteriorated from at least $126,000.00 to less than $40,000.00.

53.

Since the foreclosure was fatally defective, SunTrust, SunTrust Mortgage, and McCalla may claim Debtor is liable to SunTrust or SunTrust Mortgage on the Note.

54.

This obligation would have been extinguished by Foxfire's payment, would have been titled to the surplus which was generated when Foxfire bid more than the amount of the SunTrust debt at the time of the attempted foreclosure, had the foreclosure been effective.

POST-PETITION FACTUAL BACKGROUND

55.

The Debtor filed her voluntary bankruptcy case under Chapter 13 on December 21, 2012, the date of filing.

56.

Kristin Hurst, herein **"Trustee"**, was appointed as her Chapter 13 Trustee, and the Trustee maintains title and ownership in trust of all Debtor's property until confirmation.

57.

The Debtor proposed an ***Original*** Chapter 13 Plan **(*"Original Plan"),*** which has not been confirmed, which anticipates this Adversary Proceeding, and the need to require some resolution of the SunTrust or SunTrust Mortgage debt, and liquidation of the collateral in some way.

58.

SunTrust and SunTrust Mortgage, jointly, on  filed an Objection to Confirmation (Docket #31), herein "***Objection***",  of ***Original  Plan***.   At Paragraphs 9, 10 and 11 of the Objection, they maintain that the foreclosure was valid, even though the foreclosing creditor did not hold the Security Deed being foreclosed on, and even though after almost three years no foreclosure deed has ever been recorded, despite requirements of the law to the contrary.  No foreclosure deed ***has*** ever been recorded.

***58A.***

***SunTrust and SunTrust Mortgage, jointly, effectively reiterated their objections in their Objection in an Amended Objection to Confirmation [Docket No. 32], herein "Amended Objection".***

59.

Subsequent to the filing of the objection and the Amended Objection, and after the Superior Court denied judgment on the pleadings for the Defendants in the Foxfire Complaint, SunTrust, SunTrust Mortgage, and McCalla, or some of them, in different parts, tendered on August 27, 2013, without reservation, a refund to Foxfire of the sales proceeds, including the surplus due to Debtor.  There was no Bankruptcy Court Order permitting this.  A true and

accurate copy of the cover letter and the checks, marked "void" for security purposes, as tendered, is attached hereto and incorporated by reference as **Exhibit "10"**.

60.

Although not well grounded in the law or supported by the facts, and although requested to do so, SunTrust and SunTrust Mortgage *had* declined to withdraw their Objection to the confirmation of the Debtor's plan, *as of the date of filing of the original complaint.*

## COUNT ONE

*Declaration under State law that the **foreclosure was void and Debtor is owner of the property.***

61. - 66.

*The allegations of this Count of the original Complaint are withdrawn as moot, and the following is substituted.*

### *66A*

*Debtor, Plaintiff is entitled to a determination, as a matter of law inter alia, that she is owner of the property (subject to liens), that it is property of the estate, and that she is entitled to sell same under 11 U.S.C. § 363(f).*

## COUNT TWO

*Declaration that the debt has been satisfied by acceptance of the payoff (the bid price) in an amount exceeding the payoff.*

67. - 68.

**The allegations of this Count of the original Complaint are withdrawn.**

## COUNT THREE

*Declaration that, **since** the debt was not satisfied by foreclosure or by extinguishment on payoff, the lender is judicially estopped to contend to the contrary.*

69.

Should the Court determine that the foreclosure was not complete, SunTrust and SunTrust Mortgage are judicially estopped from denying that the foreclosure was complete under

the doctrine of judicial estoppel.  See In re Tyson Funds, Inc., 732 F.Supp. 1363, 1371 (M.D.Ga. 2010).

70.

Defendants SunTrust and SunTrust Mortgage have asserted a position in the Foxfire suit that the foreclosure was not complete, a position made unambiguous by the refund of the foreclosure bid amount, without reservation.  Id.

71.

Defendants SunTrust and SunTrust Mortgage unambiguously took the inconsistent position in this bankruptcy case that the foreclosure was complete.

72.

The inconsistency was calculated to make a mockery of the judicial system.  Id.

73.

Debtor is entitled to a declaration that, by operation of law, the Note and Security Deed have been satisfied and extinguished.

## COUNT FOUR

*Equitable subordination of the debt for Lender's deliberate failure to act on collateral **and properly handle the sales proceeds,** under 11 U.S.C. § 510.*

74.

Furthermore, should the Court determine that the foreclosure was not complete but determine that there is no basis for a judicial estoppel, or that the debt was extinguished by payment, or that the Court should not exercise its discretion to impose an equitable estoppel, the Court should equitably subordinate the claim or claims of SunTrust or SunTrust Mortgage to the claims of all other creditors and order that the lien securing the claim or claims be transferred to the estate, pursuant to 11 U.S.C. § 510(c).

75.

The Defendants SunTrust, SunTrust Mortgage, and McCalla Raymer, in consort engaged in the following conduct and action which are inequitable:

a)      they failed promptly to admit, unambiguously, that the foreclosure was effective and unavailed themselves of the statutory right to rescind a defective foreclosure under O.C.G.A. § 9-13-172.1, which provides for a safe harbor for recision of defective foreclosures, but requires a refund to the bidder of the bid price and a withdrawal of the foreclosure deed, but retained the bid price for almost three years;

b)      they failed to promptly re-call the sale after a proper assignment had been filed and bid price refunded, even if outside the safe harbor or O.C.G.A. § 9-13-172.1;

c)      they delayed admitting the error in the foreclosure and the refund to the bidder for almost three years, getting the use of the funds received*, and misleading the Plaintiff in the process*;

d)      they retained and *invested* the surplus which belonged to the Debtor;

e)      while being unable to reach a decision on how to deal with the error in the foreclosure, they allowed the collateral value to decline to a point that the only value is the value of the lot less demolition cost;

f)      in so doing, they expressed utter contempt not just of the Debtor but all of her neighbors, by unnecessarily creating a blighted property in an affluent neighborhood;

g)      they attempted to mislead this Court by here taking a position that the foreclosure was valid when they knew it was not;

*h)      SunTrust and SunTrust Mortgage have somehow enlisted the support of Columbus to hinder and delay the prosecution of this lawsuit, as to Count Five, thus keeping the property in a derelict state even longer.*

## COUNT FIVE

*Authorization for sale free and clear of liens and interests of all parties under 11 U.S.C. § 363(f), and determination of disposition of sales proceeds*.

76.

Further, whether the Court determines to impose an equitable subordination or apply judicial estoppel to extinguish the Note and Security Deed, there is cause to authorize a sale of the property free and clear of liens and interests under 11 U.S.C. § 363(f).

77.

All liens and interest in the property are in dispute in one way or another, or the claimant will be paid in full or the full value of the claimant's lien.  Those claims should be treated as above, ¶ 44 and 45, **which includes (as in the Original Complaint), that Columbus should be fully paid at closing.**

### 77A

**The Court should determine the priority of liens in the property and order escrow of same pending determination of priority.  Except with respite to Columbus as set forth in ¶77, subject to subordination of SunTrust's or SunTrust Mortgage's liens under Count Four or judicial estoppel under Count Three.**

### 77B

**To the best of Plaintiff's information and belief, the next priority lien holder on the property, after SunTrust Bank or SunTrust Mortgage, Inc., is the Internal Revenue Service and the Court should so determine.**

### 77C

**The value of the IRS lien exceeds the equity in the property and the Court should so determine.**

### 77D

**The IRS should be paid its secured claim (after the payment in full of Columbus) to the extent that the lien of SunTrust or SunTrust Mortgage is subordinated and not preserved for the benefit of the estate, and the Court should so determine.**

78.

The sale is in the best interest of the estate, and the Court should entertain supplemental pleadings to provide a mechanism to market and sell the property and distribute the proceeds to best maximize recovery for the estate and creditors. **This supplemental pleading (as articulated in the original Complaint) would be in the form of a motion, directed to the defendants but also to all parties in interest seeking approval of a specific sale.**

## COUNT SIX

*Damages for violation of the automatic stay of 11 U.S.C. § 362(k).*

79.

*If the Court determines that the Defendants SunTrust, SunTrust Mortgage, and McCalla are judicially estopped to deny that the foreclosure was valid and the debt satisfied by their prior, inconsistent position to that effect, as alleged under Count Three*, when SunTrust, SunTrust Mortgage, and McCalla refunded the bid price to Foxfire, it paid over the surplus generated by the bid price, to which the Debtor and Trustee had colorable rights.

80.

This action constituted a violation of the automatic stay in bankruptcy under 11 U.S.C. § 362(a)(3), in exercising control over property of the estate.

81.

SunTrust, SunTrust Mortgage, and McCalla were on notice of the Debtor's case.

82.

The stay violation was willful.

83.

Debtor or Trustee is entitled to recover actual damages equal to the value SunTrust, SunTrust Mortgage, and McCalla transferred away, at least $7,000.00, under 11 U.S.C. § 362(k).

84.

Debtor is entitled to recover punitive damages under 11 U.S.C. § 362(k), as the stay violation was willful.

## COUNT SEVEN

*Damages under State law for attempted wrongful foreclosure against SunTrust, SunTrust Mortgage* **and under State law and  the federal Fair Debt Collection Practices Act against McCalla.**

**A) Claims against SunTrust, SunTrust Mortgage and McCalla for wrongful foreclosure**

85.

SunTrust Mortgage when it commenced running foreclosure ads was not the holder of the Note and Security Deed and lacked the legal authority to foreclose on the property.

86.

As a result the notices of foreclosure which showed SunTrust Mortgage as the party to contact to attempt to negotiate the debt were insufficient to satisfy the requirements of Georgia law.

87.

McCalla was responsible for publication of the improper sales notices, *the tort, although as an agent or servant for SunTrust Mortgage, which is liable under the doctrine respondeat superior.*

88.

The publication of the foreclosure notices was therefore wrongful, *and tortuous, under state law.*

*88A*

*Subsequent to the foreclosure, McCalla Raymer, as agent for SunTrust Mortgage and SunTrust, issued one or more notices, including one on November 2, 2010, by which they attempted to dispossess the Plaintiff from her property.*

*88B*

*As far as the Plaintiff was aware the foreclosure was completed.  In November and December of 2011, the Plaintiff made a number of phone calls to McCalla (which was acting as agent for SunTrust Mortgage and SunTrust) trying to find out where the foreclosure deed was and to get it recorded so that she would no longer be assessed for taxes on the property.*

*88C*

*She was advised in those telephone calls that she should speak with Adam Silver, an attorney with McCalla Raymer (agent for SunTrust Mortgage and SunTrust), and she left numerous messages for him as well.*

*88D*

*When she never received a callback, she located Adam Silver's email address and emailed him on January 9, 2012  an email, a true and accurate copy of which is attached hereto and incorporated by reference as Exhibit "11".[7]  In this email she reiterated her*

---

[7]*This email was electronically forwarded to Plaintiff's counsel on July 27, 2012, and material addressed to counsel is redacted.  Attorney/client privilege is preserved.*

*understanding that the property was foreclosed, stated that the Tax Commissioner's office had told her to get in touch with the foreclosing law firm, to get the failure to record the foreclosure deed corrected, and addressed that issue to Mr. Silver.*

*88E*

*Mr. Silver's response was "We will look into this immediately", and this was received by email on the same date, January 9, 2012.  In fact, at the time that this email was sent, McCalla (and Silver) was aware that the foreclosure was defective and was so aware because Foxfire Acres' Complaint, setting up defect in the foreclosure, had been filed for almost two months at that time.  See Exhibit "7".*

*88F*

*McCalla effectively denied that there was a failure in the foreclosure, and implied to the Plaintiff that it was a technical error requiring only the recording of the security deed, by stating it had to "look into this", when it knew the situation at the time.*

*88G*

*The Plaintiff made numerous attempts after that to either reach Mr. Silver or to get some response from McCalla Raymer, but none was forthcoming.*

*88H*

*She continued to assume that the foreclosure was complete, and that there was merely a failure to record the foreclosure deed, and was therefore alarmed, when she received another tax notice in 2012, in August 2012.*

*88I*

*At the time that she contacted the Office of Fife M. Whiteside, P.C., counsel below, "Plaintiff's Counsel", she was still unaware that the foreclosure was defective.  Plaintiff's Counsel assumed that the foreclosure was complete and the error was in the failure to promptly record a foreclosure deed.*

*88J*

*She filed her Chapter 13 bankruptcy case, through the Plaintiff's Counsel, on December 21, 2012.  At the time the case was filed, neither she nor her attorney were aware that the foreclosure was defective, and it was assumed that McCalla had failed to follow through with the recording of the foreclosure deed.  Since the foreclosure deed was to have been recorded within sixty (60) days of the date of the foreclosure, she and her counsel*

*assumed that it was not going to be recorded, and that since title at that time resided with the Plaintiff, as Debtor, she could sell the property to deal with the fact that it had turned derelict and to relieve her of tax obligations and obligations under various cleanup notices issued by the City of Columbus.*

### *88K*

*Sometime after the filing of the Chapter 13 case, but prior to the date of the filing of the objection, the Plaintiff's attorney became aware of the nature of the defect in the foreclosure by contacting counsel for Foxfire, who explained the status of the litigation.*

### *88L*

*Counsel for the Plaintiff, and Debtor, and therefore the Plaintiff and Debtor, did not receive a copy of those pleadings until they were supplied by counsel for SunTrust, in May 2013.*

### *88M*

*The Plaintiff, Debtor, did not know, and could not have known through the exercise of due care, that the foreclosure was void, given the persistence by SunTrust, SunTrust Mortgage, and McCalla that it was not void, until, at the earliest when she contacted counsel in late August 2012, prior to the bankruptcy filing on December 21, 2012.*

### *88N*

*Any statute of limitations that might apply was equitably tolled by this course of conduct to the date of case filing or shortly prior and all state law statutes of limitations are statutorily tolled for two years after the filing of the bankruptcy case under 11 U.S.C. § 108(a)(2).*

### *88O*

*Plaintiff has been damaged by the wrongful foreclosure, as will be proved at time of trial.*

### *88P*

*McCalla Raymer was at all times acting as agent for SunTrust and SunTrust Mortgage so that its representations and omissions to represent were imputed to them.*

### *B) Claims against McCalla under the FDCPA*

#### *88Q*

*Furthermore, McCalla was a debt collector for purposes of  15 U.S.C.A. § 1692f, since among other reasons the debt was in default at the time notices were sent and the notices sent were part of a nonjudicial action to effect dispossession or disablement of property.*

#### *88R*

*McCalla participated in a nonjudicial action, by sending notices, publishing a foreclosure notice, and conducting a foreclosure,  to effect dispossession or disablement of property at a time when, because SunTrust Mortgage was not the record holder of the security deed to be foreclosed there was no present right to possession of the property claimed as collateral through an enforceable security interest and is entitled to recover damages and attorney's fees under the Fair Debt Collections Practices Act for violation of 15 U.S.C. § 1692f(6)(a).*

#### 89.

Debtor has suffered damages to her credit reputation, and *other damages*, and otherwise and is entitled to actual and special damages against SunTrust, Suntrust Mortgage and McCalla, *under various theories of recovery, including but not limited to those set forth above and attorney's fees against McCalla under the Fair Debt Collections Practices act.*

#### *89A*

*The Fair Debt Collections Practices Act statute of limitations was likewise equitably tolled and tolled on case filing by 11 U.S.C. § 108.*


#### <u>COUNT EIGHT</u>

*Damages under State law for conversion of the sales surplus, against SunTrust, SunTrust Mortgage, and McCalla.*

#### 90.

*If the Court determines that the Defendants SunTrust, SunTrust Mortgage, and McCalla are judicially estopped to deny that the foreclosure was valid and the debt satisfied  by their prior, inconsistent position to that effect, as alleged under Count Three*, Defendants SunTrust, SunTrust Mortgage and McCalla converted the surplus of the foreclosure proceeds by retaining them for almost three years and then by giving them away to Foxfire.

91.

Debtor is entitled to recover actual and special damages in an amount to be determined by the Court, but not less than $7,000.00, the amount converted, and emotional damages from the series of action related to the retention of the surplus, of not less than $100,000.00.

92.

The act of holding and paying over the proceeds was willful and malicious and the Debtor is entitled to punitive damages of not less than $500,000.00.

## COUNT NINE

*Attorney's fees under State law (***O.C.G.A. § 13-6-11***) for stubbornly litigious conduct.*

93.

The Defendants SunTrust, SunTrust Mortgage and McCalla have acted in bad faith, have been stubbornly litigious, and have caused the Plaintiff unnecessary trouble and expense, and have caused the Debtor unnecessary legal fees and expenses.

94.

Debtor is entitled to recover reasonable attorneys fees under **O.C.G.A. § 13-6-11***, on the condition that the Plaintiff prevails on the litigation and shows the facts set forth in paragraph 93 above.*

## COUNT TEN

***Attorney's fees under bankruptcy  law (11 U.S.C . § 506(c) as a surcharge to the liquidation value of collateral***

95.

 Counts One through Five of the original complaint and this first amended complaint seek the determination of rights in the property and an order authorizing the sale of same.  Depending on the determinations of the relative rights of the parties, except for Columbus which is entitled to be paid, ***the property is subject to someone's security interest, either SunTrust or SunTrust Mortgage or the IRS.***

*96.*

*For this reason, regardless of the determination of relative rights, except with respect to the city, the Plaintiff is entitled to recover the reasonable, necessary costs and expenses of disposing of the property, out of the proceeds of sale of the property (although payment to Columbus will be in no way affected thereby) under 11 U.S.C. § 506(c), which is requested. The amount of the fees and expenses to be determined on combined or separate supplemental motion as anticipated under Count Five, paragraph 78, but the fees and expenses will include a realtor's commission or a "stalking horse bidder" breakup fee of up to ten (10%) percent.*

THEREFORE the premises considered, Plaintiff's pray for the following relief:

a)      that SunTrust and/or SunTrust Mortgage be judicially estopped from denying same and declare the debt satisfied and the mortgage extinguished;

b)      that SunTrust and/or SunTrust Mortgage are equitably subordinated in their debt to the claims of all other creditors and their lien be ordered released;

c)      that the Court order a sale of the property free and clear of liens, under 11 U.S.C. § 363(f), as all liens are in dispute with distributions as outlined above in *¶44 and in ¶45, including payment in full to Columbus, as Plaintiff has always contended;*

d)      that the Court grant appropriate damages for violation of the automatic stay;

e)      that the Debtor have damages under Georgia State law for conversion of the surplus;

f)      that the Debtor have damages under Georgia state law for attempted wrongful foreclosure against SunTrust and SunTrust Mortgage and *damages and attorney's fees against McCalla under the federal Fair Debt Collections Practices Act ;*

g)      that, under either theory, the Debtor have an award of attorneys fees under Georgia State law;

h)      *that the Plaintiff recover attorneys fees and expenses (including realtor's fees or a "stalking horse" breakup fee in lieu of a realtor's fee of up to 10% in either case) from the proceeds of the sale of the property under 11 U.S.C. § 506(c), except with respect to Columbus, which will be paid in full at closing as outlined above in ¶44 and in ¶45, with the amount of the fees and expenses to be determined on combined or separate supplemental motion as anticipated under Count Five, paragraph 78;*

*i)*      that the Court bifurcate the State law claims and refer same to the District Court to satisfy the requirements of ***28 U.S.C. § 157(c) and*** <u>Stern v. Marshall</u>, unless defendants consent;

*j)*      that the Court grant other and general relief to which equity doth appertain.


Respectfully,


                         */s/ Fife M. Whiteside*
                         FIFE M. WHITESIDE
                         Attorney for Debtor
P.O. Box 5383                     GA Bar 756025
Columbus, GA 31906
706-320-1215

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, do hereby certify that I have this day served a true and accurate copy of the within and foregoing **First Amended Complaint for Declaratory Judgment and Lien Avoidance, Equitable Subordination, Sale Free and Clear of Liens, and Damages Under Georgia State Law** by mailing same U.S. postage prepaid on the following individuals or firms, who are counsel for all parties herein, and/or in the event a party is unrepresented, any party <u>pro se</u>, as well as through ECF notice:

U.S. Trustee
440 Martin Luther King Jr. Blvd.
Macon, Georgia  31201

A. Kristin Hurst
Chapter 13 Trustee
P.O. Box 1907
Columbus, GA 31902

Stephen G. Gunby
Page Scrantom Sprouse Tucker & Ford
P.O. Box 1199
Columbus, GA 31902-1199

Cater C. Thompson
Jones Cork & Miller, LLP
435 Second St, Suite 500
Macon, GA31201

James D. Patrick
831 2nd Avenue
Columbus, GA 31901

The Grogan Group, LLC
c/o Grogan & Grogan
P.O. Box 1518
Columbus, GA 31902

Grogan & Grogan
Attn: Lynn Grogan, Agent
P.O. Box 1518
Columbus, GA 31902

Barbara G. Parker
Office of U.S. Attorney - Macon
P.O. Box 1702
Macon, GA 31202

Audrey Seidle Eshman
Assistant Attorney General
40 Capitol Square, S.W.
Atlanta, Georgia 30334-1300

This 24th day of January, 2014.

　　　　　　　　　　　　　　　　　 */s/ Fife M. Whiteside*　　　　　　
　　　　　　　　　　　　　　　　　 FIFE M. WHITESIDE