**SIGNED this 19 day of December, 2014.**



_____
John T. Laney, III
**Chief United States Bankruptcy Judge**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF GEORGIA**
**COLUMBUS DIVISION**

| | | |
|---|---|---|
| In re: | * | Chapter 13 |
| LESLIE McDANIEL, | * | Case Number: 12-41231-jtl |
| | * | |
| Debtor, | * | |

_____

| | | |
|---|---|---|
| LESLIE McDANIEL, Individually and as | | |
| Representative of her Bankruptcy Estate, | * | Adversary Proceeding |
| | * | No: 13-04013 |
| Plaintiff, | * | |
| Vs. | * | |
| | * | |
| SUNTRUST BANK, SUNTRUST MORTGAGE, | * | |
| INC., McCALLA RAYMER, LLC, FOXFIRE ACRES, | * | |
| INC., THE UNITED STATES by and through the | * | |
| INTERNAL REVENUE SERVICE, THE STATE OF | * | |
| GEORGIA (Represented by the DEPARTMENT | * | |
| OF REVENUE), THE GROGAN GROUP, | * | |
| LLC d/b/a GROGAN & GROGAN, and | * | |
| THE COLUMBUS CONSOLIDATED | * | |
| GOVERNMENT, | * | |
| | * | |
| Defendants. | * | |

## MEMORANDUM OPINION

This matter comes before the Court on Motions for Summary Judgment (the "Motion") filed by defendants McCalla Raymer, LLC ("McCalla"), SunTrust Bank and SunTrust Mortgage, Inc. (collectively "SunTrust"). McCalla filed its motion individually, while SunTrust Bank and SunTrust Mortgage filed a joint motion and also adopted the factual and legal arguments put forth in the McCalla motion. Together, the motions for summary judgment filed by McCalla and SunTrust address substantially all allegations raised in the Plaintiff's Complaint. The Court heard oral arguments on the Motion on October 22, 2014, in Columbus, Georgia. The Court has determined each issue raised in both the McCalla and SunTrust motions in this consolidated opinion. For the reasons set forth below, the Court grants in part and denies in part the Defendants' Motion.

### Summary Judgment Standard

In dealing with motions for summary judgment, Federal Rule of Civil Procedure 56 is made applicable to adversary proceedings in bankruptcy cases by Federal Rules of Bankruptcy Procedure 7056. Pursuant to Rule 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Like a district court, a bankruptcy court must determine that there are no genuine issues of material fact and accept all undisputed facts as true in order to find that summary judgment is warranted as a matter of law. *Gray v. Manklow (In re Optical Technologies, Inc.),* 246 F.3d 1332, 1334 (11th Cir. 2001). An

issue is "material" if it affects the outcome of the case under the applicable law. *Redwing Carriers, Inc. v. Saraland Apartments,* 94 F.3d 1489, 1496 (11th Cir.1996). A factual dispute is *genuine* if the evidence would allow a reasonable fact finder to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). With that standard in mind, the Court makes the following findings of fact and conclusions of law.

**Factual Background**

I.    The Botched Foreclosure and the Foxfire Suit

Plaintiff, Leslie McDaniel (herein referred to as "Plaintiff" or "McDaniel"), is a co-debtor on a promissory note (the "Note") dated February 13, 1992, evidencing a loan in the original amount of $106,400, in favor of Trust Company Bank of Columbus, N.A. ("Trust Company"). The Note was secured by a Deed to Secure Debt (the "Security Deed") executed in favor of Trust Company and encumbering property located at 2627 Meadowview Drive, Columbus, Georgia (the "Property"). The evidence shows this loan was subsequently modified on May 1, 1997. As part of her 2005 divorce, Plaintiff was to assume responsibility for payments on the Note and the Security Deed.

Plaintiff subsequently defaulted on the Note and Security Deed. As a result of Plaintiff's default a foreclosure was commenced in the name of SunTrust Mortgage, which advertised the property for a sale to occur on November 2, 2010. Unfortunately, however, SunTrust Mortgage was not the holder of the Security Deed. Instead, SunTrust Bank, as successor by merger to Trust Company, was the actual holder of the Security Deed, and at

the time of the foreclosure there had not been an assignment of the Security Deed from SunTrust Bank to SunTrust Mortgage.

At the November 2, 2010, foreclosure sale, Foxfire Acres, Inc. ("Foxfire") submitted the highest bid for the Property in the amount $126,000. Following the foreclosure sale Foxfire learned through a title examination that the holder of the Security Deed was actually SunTrust Bank, the successor by merger to Trust Company, rather than the foreclosing entity SunTrust Mortgage. After the title issues were discovered Foxfire engaged counsel to attempt to clear up the problems with the title or to get a refund of the bid price.

To that end, counsel for Foxfire contacted McCalla, which had served as counsel for SunTrust Mortgage during the foreclosure proceedings. Beginning on January 8, 2011, counsel for Foxfire sent a series of letters to McCalla notifying it that there were problems with the title to the Property. On March 2, 2011, after not receiving a response from McCalla, counsel for Foxfire e-mailed Adam Silver, an attorney with McCalla and the head of the firm's foreclosure department, notifying him of the January 8, letter and of the defects related to the title of the Property. Unhappy with McCalla's response, or lack thereof, counsel for Foxfire sent two additional letters to Mr. Silver notifying him of Foxfire's intention to assert a claim against McCalla and SunTrust Mortgage. The second of these letters was received by McCalla on April 29, 2011. At his deposition Mr. Silver acknowledge receipt of the letters from Foxfire and stated that he had forwarded them to McCalla's litigation department.  In November 2011 Foxfire filed suit against McCalla and SunTrust Mortgage in the Superior Court of Muscogee County (the "Foxfire Suit"). Plaintiff, as well as SunTrust Bank, are not parties to the Foxfire Suit. Both McCalla and

4

SunTrust Mortgage filed answers denying that the foreclosure had failed. At the time of this ruling, the Foxfire Suit is still pending.

## II.    McDaniel Bankruptcy

On November 1, 2010, the day prior to the foreclosure sale, Plaintiff voluntarily moved out of her home. When she left, Plaintiff left behind certain property items because she was unable to make arrangements for storage of those items. In late 2011, Plaintiff received a tax notice related to the foreclosed property. After receiving the tax notice Plaintiff contacted the Muscogee County Tax Commissioner's ("Tax Commissioner") office, and was informed that the foreclosure deed had not been recorded, and that the tax records still showed her to be the owner of the Property. Following her conversation with the Tax Commissioner's office, Plaintiff contacted McCalla several times, but spoke only briefly with clerical staff. Eventually, however, in January 2012, Plaintiff sent an e-mail to Mr. Silver, a partner at McCalla, which read as follows:

> Mr. Silver,
>
> Attached is a copy of a 2011 property tax bill [I] received last week. This property was owned by me from 1988-November, 2010, and the mortgage was through SunTrust. The property was foreclosed upon in November, 2010, and sold on the courthouse steps. I contacted the tax office and was told that the property has not been transferred to anyone yet, and advised that I get in touch with the law firm that handled the foreclosure to correct this problem. I was told that a FI FA would be issued by February 1st against me even though I didn't own this property at all during 2011.
>
> Please advise.

[McDaniel Aff. Ex 2]. Mr. Silver replied to Plaintiff's e-mail that "[w]e will look into this immediately." This is the only evidence of direct contact between any of the Defendants and Plaintiff. At the time of Mr. Silver's e-mail to Plaintiff, the Foxfire Litigation was pending in the Superior Court of Muscogee County. Mr. Silver, nor anyone from McCalla

or SunTrust, ever informed Plaintiff of the Foxfire Litigation or the problems with the November 2, 2010, foreclosure.

On December 21, 2012, in an attempt to deal with the debt secured by her home and the lack of foreclosure on the home, Plaintiff filed a chapter 13 bankruptcy. After the filing of the bankruptcy case, counsel for Plaintiff learned of the Foxfire Litigation. Plaintiff filed a Chapter 13 Plan proposing to require SunTrust to either properly foreclose the property or allow her to sell it. SunTrust objected to confirmation of the plan, asserting that the November 2, 2010, foreclosure sale was valid and therefore Plaintiff had no interest in the Property. SunTrust's objection to confirmation in Plaintiff's bankruptcy mirrored its position in the Foxfire Litigation—that the November 2, 2010, foreclosure was valid. Counsel for Plaintiff contacted counsel for SunTrust in an attempt to resolve the confirmation dispute. Counsel for Plaintiff also sent a notice, as required under Fed. R. Civ. P. 9011, asking SunTrust to discontinue its position regarding the validity of the foreclosure. Unable to reach a resolution, Plaintiff brought a motion for sanctions pursuant to Rule 9011 and also brought a motion to sell the Property. Plaintiff then filed this adversary proceeding on October 17, 2013, against all parties which had a possible claim to any interest in the Property, including SunTrust Mortgage, SunTrust Bank, McCalla, and Foxfire. [Compl., ECF No. 1].

In August 2013, counsel for McCalla tendered to Foxfire the sum of $126,000, an amount equal to the Foxfire bid price. McCalla also tendered an additional $28,840, representing interest on the $126,000 bid price. On December 2013, SunTrust withdrew its objection to confirmation and conceded that the foreclosure had not been valid and that Plaintiff was the still the owner of the property at 2627 Meadowview Drive. Accordingly,

the Debtor was able to sale the Property in May 2014, for $132,500, which is $6,500 more than the Property sold for at the November 2, 2010, foreclosure. On May 30, 2014, the Court granted McCalla's motion to tender the sum of $9,500 into the registry of the Court, an amount representing the amount of the alleged "excess proceeds" from the November 2, 2012, foreclosure. On October 2, 2014, the Court granted a motion to release those funds back to McCalla.

In her complaint Plaintiff asserts numerous claims, both separately and collectively, against McCalla, SunTrust Bank, and SunTrust Mortgage. In total, Plaintiff's complaint lists at least ten separate claims, some of which have multiple sub-parts. Some of those claims, such as Plaintiff's claim for a declaration that she is (was) the owner of the property, have been disposed of and are not before the Court either due to withdrawal by the Plaintiff, or the claims have been conceded by the Defendants. Below, the Court addresses each of the claims remaining in Plaintiff's Complaint.

## Conclusions of Law

I.    Count 3: Judicial Estoppel

In Count 3 of her complaint, Plaintiff contends that the doctrine of judicial estoppel bars SunTrust from denying that the November 2, 2010, foreclosure was complete and the underlying debt thereby extinguished.  "Judicial Estoppel is an equitable doctrine that precludes a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *Nettles v. State Farm Fire and Cas. Co.,* No. 4:10-CV-106, 2011 WL 2462556, at *3 (M.D.GA. June 17, 2011) (quoting *Barger v. City of Cartersville, Ga.*, F.3d 1289, 1293 (11th Cir. 2003)). "Judicial estoppel applies in situations involving intentional contradictions,

not simple error or inadvertence." *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1287 (11th Cir. 2002). The purpose of the doctrine is "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (internal citations omitted).

In *New Hampshire v. Maine*, the Supreme Court discussed three factors that courts typically consider when invoking judicial estoppel: "(1) whether the present position is clearly inconsistent with the earlier position; (2) whether the party succeeded in persuading a court to accept the earlier position, so that judicial acceptance of the inconsistent position in a later proceeding would create the perception that either the first or second court was misled; and (3) whether the party advancing the inconsistent position would derive an unfair advantage." *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1273 (11th Cir. 2010)(citing *New Hampshire*, 532 U.S. at 750-751); *see also Tampa Bay Water v. HDR Engineering, Inc.*, 731 F.3d 1171, 1181 (11th Cir. 2013) (listing the three *Robinson* factors). Additionally, in the Eleventh Circuit courts consider whether the inconsistent positions "have been calculated to make a mockery of the judicial system." *Id.* at 1285 (*quoting Burnes*, 291 F.3d at 1285); *Nettles*, 2011 WL 246556 (M.D. GA. 2011). However, as stated previously by this Court, judicial estoppel is an equitable doctrine that is applied at the court's discretion. *Kelley v. Speciale (In re Gregg)*, Adv. No. 11-4047, 2014 WL 3339595, at *5 (Bankr. M.D. GA. July 7, 2014). Therefore, these factors are not exhaustive and a court may consider additional factors that are relevant to a specific circumstance. *New Hampshire*, 532 U.S. at 751.

First, SunTrust's position in this case, that the foreclosure sale was void, is clearly inconsistent with the position taken in the Foxfire Litigation and the position it initially took in the Plaintiff's underlying bankruptcy. In the Foxfire Litigation SunTrust contends that the November 2, 2010, foreclosure of Plaintiff's property was valid. Additionally, in the Plaintiff's underlying bankruptcy

SunTrust filed an objection to confirmation of Plaintiff's proposed Chapter 13 Plan and asserted the same. However, SunTrust later withdrew that objection on December 13, 2013, and abandoned its earlier position. In this adversary proceeding, however, SunTrust has conceded that the foreclosure sale was void.  Thus, it is clear to the Court that SunTrust has taken a position in this case that is contradictory to the position it has taken in the Foxfire Litigation and the position it initially took in the underlying bankruptcy case.

Although the Court finds that SunTrust has taken an inconsistent legal position, that alone is not enough to invoke judicial estoppel. *See New Hampshire*, 532 U.S. at 750. Also relevant to the Court's determination is "whether the party succeeded in persuading a court to accept the earlier position, so that judicial acceptance of the inconsistent position in a later proceeding would create the perception that either the first or second court was misled." *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1273 (11th Cir. 2010)(citing *New Hampshire*, 532 U.S. at 750-751). However, "judicial acceptance of the stated position . . . does not require a party to ultimately prevail on the merits." *Sumner v. Michelin N. Am., Inc.*, 966 F. Supp. 1567, 1578 (M.D. Ala. 1997) (internal quotations omitted). But, at a minimum, it requires that the earlier court adopt the asserted position. *Id.* at 1578.

In the present case, SunTrust has not convinced any court that the foreclosure sale was complete and valid. It is the Court's understanding, and there is nothing in the record to the contrary, that the Foxfire Litigation is still pending, and the court in that case has not made any determination—either preliminary or on the merits—as to the validity of the November 2, 2010, foreclosure.[1]  In her brief Plaintiff argues that although SunTrust has not succeeded in convincing

---

[1] Counsel for SunTrust and McCalla, both of which are parties to the Foxfire Litigation, stated at the hearing that the Foxfire Litigation was still pending, and the parties are awaiting the Superior Court's ruling on a discovery matter.

a court that the foreclosure sale was valid, it has succeeded in delaying confirmation of Plaintiff's Chapter 13 Plan and that this is the type of success that should trigger the Court's application of judicial estoppel. "Success" does not necessarily mean a judgment on the merits of the prior position. However, this factor does require that the first court adopt the previous position, either as a preliminary matter or as part of a final disposition. *Sumner,* 966 F. Supp. at 1578.

To support her argument that the delay in Plaintiff's underlying bankruptcy is a "success," Plaintiff relies on the Sixth Circuit case of *Mirando v. U.S. Dept. of Treasury*, 766 F. 3d 540 (6th Cir. 2014). *Mirando*, however, is not applicable to the current case. In that case, a taxpayer who had been convicted of income tax invasion, filed a refund suit seeking to recover amounts allegedly overpaid to the Internal Revenue Service ("IRS") based on three of the four taxable years for which he was convicted. *Id*. In *Mirando*, the Court found that the plaintiff was judicially estopped from bringing his refund tax claim based upon the plea agreement in the criminal case. *Id.* Specifically, the court found that the taxpayer had succeeded in persuading the sentencing court in his prior criminal case to accept his earlier position when he pled guilty to conspiracy to defraud the United States and income tax invasion, and that judicial acceptance of his position in the subsequent refund tax case would create the perception that previous court had been misled. *Id.* at 547.

Here, unlike in *Mirando*, SunTrust has not been successful in persuading a court to accept its prior argument—that the foreclosure sale was valid. There is no evidence in the record that the court in the Foxfire Litigation has accepted SunTrust's contention that the foreclosure sale was valid. Additionally, SunTrust withdrew its objection to confirmation in Plaintiff's underlying bankruptcy before this court could consider it. Moreover, SunTrust has maintained in this adversary proceeding that the foreclosure sale was void and have also conceded that point in the underlying bankruptcy. Therefore, even if SunTrust has achieved "success" in delaying Plaintiff's

confirmation by taking inconsistent legal positions, it is not the type of "success" that would preclude it from abandoning a clearly erroneous position.

Moreover, the Court in *Mirando* found that the taxpayer would gain an unfair advantage if not estopped from asserting his tax refund claim because the IRS agreed to not prosecute his family in exchange for the taxpayer's guilty plea. *Mirando*, 766 F.3d at 548. Here, unlike the taxpayer in *Mirando*, SunTrust has not gained an unfair advantage by switching its position. To the contrary, by switching positions SunTrust has opened itself to the possibility of judicial estoppel being applied in the Foxfire Litigation because this court is now acting based upon the parties' stipulation that the November 2, 2010, foreclosure was void. Therefore, if anything, by abandoning the position that the foreclosure sale was valid, SunTrust has put itself at a disadvantage in the Foxfire Litigation.

Finally, there is no evidence in the record that the actions of SunTrust have been "calculated to make a mockery of the judicial system." *Robinson*, 595 F.3d at 1273. Instead, it is clear to the Court that SunTrust simply took a legal position (that the foreclosure sale was complete) and when it realized that position was unlikely to prevail in this case, withdrew its objection to confirmation and abandoned that position. Accordingly, the Court finds that SunTrust is not judicially estopped from denying that the November 2, 2010, foreclosure was valid and from denying that Plaintiff's debt to SunTrust Bank was thereby extinguished. Therefore, Defendants are entitled to summary judgment as to Count 3.

II.    Count 4 - Equitable Subordination.

In Count 4 of her complaint Plaintiff seeks to have the claim of SunTrust equitably subordinated to those of other creditors or to have the lien securing its claim transferred to the estate pursuant to 11 U.S.C.§ 510(c). In pertinent part, Section 510(c) provides that:

> Notwithstanding subsection (a) and (b) of this section, after notice and a hearing, the court may –
>
> > (1) Under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or
> >
> > (2) Order that any lien securing such subordinated claim be transferred to the estate.

11 U.S.C. § 510(c). To have a claim equitably subordinated the moving party must establish three elements: "(1) That the claimant has engaged in inequitable conduct; (2) That the conduct has injured creditors or given an unfair advantage to the claimant; and (3) That subordination is not inconsistent with the Bankruptcy Code." *In re N & D Properties, Inc.*, 799 F.2d 726, 731 (11th Cir. 1986)(citing *In re Mobile Steel*, 563 F.2d 692 (5th Cir. 1977)). However, the burden and sufficiency of proof varies depending upon the particular facts of each case. *Id.* "Where the claimant is an insider or a fiduciary, the trustee bears the burden of presenting material evidence of unfair conduct. Once the trustee meets his burden, the claimant then must prove the fairness of his transactions with the debtor." *Id*. (internal citations omitted). On the other hand, when the claim sought to be subordinated is not one of an insider or fiduciary the party seeking subordination must "prove more egregious conduct such as fraud, spoilation [spoliation][2] or overreaching, and prove

---

[2] The Court in *In re N & D Properties, Inc.*, did not give a definition of "spoilation." Additionally, Plaintiff's brief does not point to any authority that provides guidance as to the definition of the term. The Court, through its own research, was unable to locate any binding authority in this Circuit which defined the term. However, the *Collier on Bankruptcy* treatise does provide the Court with some guidance. According to *Collier* a party seeking to equitably subordinate a non-insider claim must prove "fraud, *spoilation* or overreaching." 4 Alan N. Resnick & Henry Sommer,

it with particularity." *Id.* Therefore, a Court must determine the status of the claimant in order to apply the correct standard. The correct standard, of course, depends on whether SunTrust is an insider or fiduciary of Plaintiff.

The Bankruptcy Code defines an "insider" of an individual debtor as: (i) a relative of either the debtor or a general partner of the debtor; (ii) a partnership in which the debtor is a general partner; (iii) a general partner of the debtor; or (iv) a corporation of which the debtor is a director or officer. 11 U.S.C. 101(31)(A)(i) – (iv). Generally, under Georgia law, there is "no confidential [or fiduciary] relationship between a lender and borrower or mortgagee and mortgagor for they are creditor and debtor with clearly opposite interest." *ARP v. United Community Bank et al*, 272 Ga. App. 331, 334 (Ga. App. 2005); *see also C & S Nat. Bank v. Arnold*, 240 Ga. 200, 201 (Ga. 1977) (stating that there is generally no confidential relationship between a bank and its customers).

In this case, there is not an insider or fiduciary relationship between SunTrust and Plaintiff, nor does the record show evidence that SunTrust has ever been in a fiduciary or insider relationship with the Plaintiff. Therefore, the Plaintiff must prove more than "inequitable conduct," she must prove that SunTrust engaged in more egregious conduct such as fraud, spoliation, or overreaching. *See In re N & D Properties, Inc.*, 799 F.2d at 731.

Plaintiff alleges that SunTrust committed "spoliation" by taking steps to block the liquidation of Plaintiff's home.[3] In support of her argument Plaintiff points out that SunTrust failed

---

Collier on Bankruptcy § 510.05[3] (16th ed. 2013). Notably, *Collier* cites to *In re N & D Properties* in support of this proposition, as well as several other cases from various courts. *Id* (citing *Shubert v. Lucent Techs. Inc. (In re Winstar Communications, Inc.)*, 554 F.3d 382 (3d Cir. 2009); *J & M Salupo Development Co.*, 388 B.R. 795 B.A.P. 6th Cir. 2008); *In re First Alliance Mortgage Co.*, 298 B.R. 652 (C.D. Cal. 2003) ("[i]n the case of a non-fiduciary, non-insider, gross and egregious conduct, tantamount to fraud, misrepresentation, overreaching, *spoliation* or conduct involving moral turpitude are required before a court will equitably subordinate a claim"). Therefore, for the purposes of this opinion, the Court will view "spoliation" and "spoilation" as interchangeable.
[3] Although not specifically addressed in the "equitable subordination" section of Plaintiff's brief, for the reason stated in Part IV(iii) of this opinion, Plaintiff has not presented sufficient evidence to warrant a fraud claim.

to advise her that the foreclosure had failed, insisted the foreclosure had been completed, took possession of the house by accepting the return of the keys from Foxfire, and initially objected to Plaintiff's Chapter 13 Plan, which called for Plaintiff to sell the property. These actions, Plaintiff argues, amount to "spoliation," which is an example of egregious conduct that allows for the equitable subordination of a non-insider or non-fiduciary claim. *See In re N & D Properties, Inc.*, at 731. I do not agree.

Spoliation is a term that refers to the destruction or alteration of evidence. *Black's Law Dictionary* 1621 (10th ed. 2014). In the present case, there is no evidence that SunTrust has taken any steps to destroy or alter evidence. Therefore, SunTrust's claim will not be equitably subordinated, and SunTrust is entitled to summary judgment on the issue of equitable subordination.

Additionally, Plaintiff's claim for equitable subordination fails the second prong of the *Mobile Steel* test, which requires a showing that the inequitable conduct resulted in harm to other creditors. *In re N & D Properties, Inc.*, 799 F.2d at 731. The doctrine of equitable subordination is not penal in nature, and should only be applied to the extent necessary to offset the harm caused by the inequitable conduct.  *In re Mobile Steel Co.*, 563 F.2d at 700-701;  *In re SubMicron Systems* Corp, 432 F.3d 448, 462 (3d Cir. 2004); *See also* Collier on Bankruptcy, § 510.05[2].

In the case at bar, none of Plaintiff's creditors suffered any harm as a result of SunTrust's alleged inequitable conduct. By order of this Court, the Property was sold free and clear of liens on May 9, 2014, for the sum of $132,500. Therefore, the Property brought more than it did at the void foreclosure held on November 2, 2010. The botched 2010 foreclosure, generated at least

---

Therefore, the Court finds that equitable subordination of SunTrust's claim because of fraudulent conduct is not warranted.

$7,000 over and above the debt owed to SunTrust. Therefore, if the 2010 foreclosure had been effective Plaintiff or her creditors would have been entitled to the excess proceeds.[4]

Although the May 9, 2014, sale generated more "gross proceeds," it produced less "net proceeds" because a real estate commission and ad-valorem taxes were paid out of the sale proceeds. Therefore, the only possible harm to the Plaintiff's creditors would be the difference in the "net proceeds" from the 2010 and 2014 sales—approximately $9,000. On May 30, 2014, the Court granted McCalla's motion to tender the sum of $9,500 into the registry of the Court. However, neither Plaintiff's other creditors, nor the Chapter 13 Trustee made any claim to those funds and the Court ordered those funds released back to McCalla on October 2, 2014. Therefore, the Court finds that no creditors would have been harmed as the result of SunTrust alleged "inequitable conduct," and SunTrust is entitled to summary judgment on Count 4.

III.    Count 6: Violation of the Automatic Stay

In Count Six of her complaint Plaintiff contends that if SunTrust is judicially estopped from withdrawing its original position—that the foreclosure was valid—then SunTrust violated the automatic stay when it refunded Foxfire's bid price because that bid was over and above the debt Plaintiff owed to SunTrust Bank and she would have been entitled to the excess proceeds of the sale. Since the Court does not find that SunTrust is judicially estopped from claiming the foreclosure sale was void, the Court finds that SunTrust did not violate the automatic stay by returning Foxfire's bid price, including the excess proceeds.

---

[4] At the time of the foreclosure the IRS and the Georgia Department of Revenue had both filed lines on the property.

IV.    Count 7: State Law Wrongful Foreclosure, Tortious Interference with Property Rights, Fraud, and Violation of the Fair Debt Collections Practices Act.

   i.    Count 7(A)(1): Wrongful Foreclosure

In Count 7(A)(1) of her complaint Plaintiff asserts a claim for wrongful foreclosure against both McCalla and SunTrust. In Georgia, a claim for wrongful foreclosure is granted by statute. Under O.C.G.A. § 23-2-114 a creditor has a duty of good faith when exercising the power of sale. Accordingly, "[a] claim for wrongful exercise of a power of sale under OCGA § 23-2-114 can arise when the creditor has no legal right to foreclose." *Degolyer v. Green Tree Servicing, LLC*, 291 Ga. App. 444, 449 (2008) (quoting *Brown v. Freedman*, 222 Ga. App. 213, 214 (1996)). To maintain a claim for wrongful foreclosure "Georgia law requires a plaintiff . . . to establish a legal duty owed to it by the foreclosing party, a breach of that duty, a causal connection between the breach of that duty and the injury it sustained, and damages." *Id.* at 448 (quoting *Heritage Creek Dev. Corp. v. Colonial Bank*, 268 Ga. App. 369, 371 (2004)).

In this matter, although there is no doubt that SunTrust Mortgage was not the proper party to foreclose Plaintiff's property, SunTrust and McCalla argue that Plaintiff cannot maintain a claim for wrongful foreclosure because the applicable statute of limitations has run, or alternatively that Plaintiff has not suffered any damages. In a claim for wrongful foreclosure the applicable statute of limitations is dependent upon the nature of the damages sought by the plaintiff. Here, Plaintiff seeks to recover for damages to her reputation and her property caused by the actions of McCalla and SunTrust. In Georgia, actions seeking damages to reputation must be brought with one year after the cause of action accrued. O.C.G.A. § 9-3-33. On the other hand, a claim for damages to property is subject to a four year statute of limitations. O.C.G.A. §§ 9-3-30, 9-3-31.

As a threshold matter the Court must first decide whether the applicable limitations period had expired at the time of Plaintiff's bankruptcy filing. The botched foreclosure took place on

November 2, 2010. Plaintiff filed her bankruptcy on December 21, 2012.[5] Thus, as Plaintiff

acknowledges in her brief, the statute of limitations would have run on her claim for reputation

damages prior to the filing of her bankruptcy petition. Nonetheless, Plaintiff asserts that she should

be allow to recover reputation damages because the statute of limitations was "equitably tolled"

by the actions of McCalla and SunTrust.

Equitable tolling is "an extraordinary remedy which is typically applied sparingly." *Steed v*

*Head*, 219 F.3d 1298, 1300 (11th Cir. 2000). In *Hamburger v. PFM Capital Mgmt., Inc.*, the

Georgia Court of Appeals explained that equitable tolling is appropriate when:

> "The defendant ... is guilty of a fraud by which the plaintiff has been debarred or
> deterred from bringing an action, the period of limitation shall run only from the
> time of the plaintiff's discovery of the fraud." In cases where the gravamen of the
> underlying cause of action is actual fraud, "the statute of limitations is tolled until
> the fraud is discovered or by reasonable diligence should have been discovered."
> And "[f]ailure to exercise reasonable diligence to discover the fraud may be
> excused where a relationship of trust and confidence exists between the parties." In
> contrast, "where the gravamen of the underlying action is not a claim of fraud, ...
> the statute of limitations is tolled only upon a showing of a separate independent
> actual fraud involving moral turpitude which deters a plaintiff from filing suit. In
> such cases, before the running of the limitation period will toll, it must be shown
> that the defendant concealed information by an intentional act-something more than
> a mere failure, with fraudulent intent, to disclose such conduct, unless there is on
> the party committing such wrong a duty to make a disclosure thereof by reason of
> facts and circumstances, or the existence between the parties of a confidential
> relationship."

286 Ga. App. 382, 388 (2007) (citations omitted).

In the instant matter, the "gravamen of the underlying case" is an allegedly wrong

foreclosure, rather than fraud. *See id.* Additionally, there is no fiduciary or confidential relationship

---

[5] Under 11 U.S.C. § 108, the filing of a bankruptcy petition automatically tolls the statute of limitations for any claims the debtor may have.

between McCalla and Plaintiff, or SunTrust and Plaintiff.[6]Accordingly, Plaintiff must show a separate independent act of actual fraud that deterred her from filing the suit, such as intentional concealment. *Hamburg*, 286 Ga. App. at 388.  Plaintiff argues that McCalla's "evasive answer" to her inquiries about the foreclosure is such a concealment. However, the allegedly "evasive answer" Plaintiff points to took place in an e-mail response from Mr. Silver to Plaintiff in January 2012, which is more than one year from the November 2, 2010, foreclosure. Thus, at the time of the action that Plaintiff contends warrants a tolling of the statute, the limitations period had already expired. The Plaintiff cites to no authority, and the Court is aware of none, that would allow a limitations period that has already expired to be revived based on the facts now before the Court. Accordingly, the Court finds that even if McCalla's "evasive answer" were enough to warrant an equitable tolling of the statute, it is not enough to resurrect a limitations period that had already run. Therefore, the Court finds that McCalla and SunTrust are entitled to summary judgment on the issue of reputation damages resulting from a wrongful foreclosure.

Turning next to Plaintiff's claim for property damages based on the wrongful foreclosure claim, the Court finds that McCalla and SunTrust are not entitled to summary on that issue. In Georgia, claims for property damage are subject to a four year statute of limitations. As stated previously, the Plaintiff filed her bankruptcy within four years of the November 2, 2010, foreclosure. Thus, she brought her claim for property damage within the applicable statute of limitations period.

To establish a claim for wrongful foreclosure the plaintiff must show a duty owed to her by the foreclosing party, a breach of that duty, and that her damages were a result of a breach of

---

[6] As the court explained earlier in Part II, there is no fiduciary relationship between a bank and its customers. Thus, as agent for SunTrust Mortgage, McCalla would have no fiduciary duty to Plaintiff.

that duty. *Degolyer*, 291 Ga. App. at 448. In Georgia, a creditor owes the debtor a duty of good

faith in the exercise of the power sale. O.C.G.A. § 23-2-114; *Degolyer*, 291 Ga. App. at 449. "A

claim for wrongful exercise of a power of sale under O.C.G.A. § 23-2-114 can arise when the

creditor has no legal right to foreclose." *Degolyer,* 291 Ga. App. at 449.

Here, SunTrust Mortgage had no right to foreclose on the Plaintiff's property because it

was not the actual holder of the security deed and because there had not been an assignment of the

security deed from SunTrust Bank to SunTrust Mortgage prior to the November 2, 2010,

foreclosure. Thus, there is a genuine issue of material fact as to whether SunTrust Mortgage's

wrongful exercise of the power of sale was a breach of the duty of good faith owed to Plaintiff.

Additionally, summary judgment on the issue of wrongful foreclosure is not appropriate

because there is a genuine issue as to whether Plaintiff has suffered damages as a result of the

foreclosure sale. McCalla and SunTrust rely on Plaintiff's own deposition testimony to show that

she has suffered no damages. During her deposition Plaintiff stated that she was not damaged as a

result of anything McCalla, SunTrust Bank, or SunTrust Mortgage did to her.  (McDaniel Dep.,

pp. 31-34). However, at her deposition Plaintiff also testified, on direct examination, that she had

suffered damages as a result of the botched foreclosure. (McDaniel Dep., pp. 101-104). In addition,

as part of her response to the Motion Plaintiff filed an affidavit in which she claimed to have

suffered at least $10,000 in property damage as a result of the botched foreclosure. (McDaniel

Aff., ECF. No. 283) The Defendants have urged the court to disregard the Plaintiff's affidavit

because it contradicts her deposition testimony.

In general "when a party has given clear answers to unambiguous questions which negate

the existence of any issue of material fact, that party cannot thereafter create such an issue with an

affidavit that merely contradicts, without explanation, previously given clear testimony." *Van T. Junkins & Assoc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984). Importantly, a court "may *only* disregard an affidavit that contradicts, without explanation, previously given *clear testimony.*" *Lane v. Celotex Corp.*, 782 F.2d 1526, 1532 (11th Cir. 1986). Additionally, this rule is to be applied sparingly "because of the harsh effect it may have on a party's case." *Allen v. Bd. Of Pub. Educ. For Bibb County*, 495 F.3d 1306, 1316 (11th Cir. 2007). Moreover, courts recognize "a definite distinction . . . between discrepancies which create transparent shams and discrepancies which create an issue of credibility or go to the weight of the evidence." *Tippen v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986).

Here, the Court finds that there is a genuine issue of material fact as to whether Plaintiff has suffered damages as the result of the botched foreclosure. First, the Court accepts the Plaintiff's affidavit because it does not appear to the Court to be a "transparent sham" created with the sole purpose of defeating the Defendants' Motion. Although there are inconsistencies between Plaintiff's deposition testimony and the subsequent affidavit, such inconsistencies are minimal and not the sort of "contradiction" of "clear testimony" that would warrant this Court disregarding the affidavit. Instead, any inconsistency would go to Plaintiff's creditability, and it is up to a fact finder to weigh creditability, not a court that is considering summary judgment. Moreover, the affidavit is not wholly inconsistent with the deposition testimony given by Plaintiff on direct examination. For example, in her deposition Plaintiff stated that she had to leave behind certain items because she was unable to find a place to store those items. She also stated that she received delinquent tax notices and clean up notices from the City of Columbus. Additionally, during direct examination Plaintiff read into the record her answers to the Defendants' interrogatories, which stated that she was waving her right to emotional distress and personal injury damages, but was seeking to recover

for damage to her credit, maintenance costs for the property, and interest incurred on debts to SunTrust Bank that would have been satisfied had the foreclosure sale be properly conducted. Therefore, the Plaintiff's own testimony during direct examination raises at least a "genuine issue" as to whether Plaintiff suffered any property damages.  Accordingly, the Court finds that there a genuine issue of material fact as to whether the Plaintiff has suffered property damage as a result of the botched November 2, 2010, foreclosure.

ii.    Count 7(A)(2): Tortious Interference With Property Rights

In Count 7(A)(2) of her complaint McDaniel asserts a claim for the tort of tortious interference with property rights pursuant to O.C.G.A. § 51-9-1, which provides that "[t]he right of enjoyment of private property being an absolute right of every citizen, every act of another which unlawfully interferes with such enjoyment is a tort for which an action shall lie." Further, "[u]nder OCGA §§ 51–9–2[7] and 51–9–3,[8]one in bare possession of land is sufficient to authorize recovery for interference with the possession of the land 'in any manner.'" *Lee v. S. Telecom Co.*, 303 Ga. App. 642, 644 (2010). "Bare possession of land authorizes the recovery of damages from anyone wrongfully interfering with the possession." *Id.; Tacon v. Equity One,* 280 Ga. App. 183, 188 (2006); *Collins v. Baker,* 51 Ga. App. 669, 674 (1935). Such a claim is rooted in trespass, and in Georgia "a trespasser is one who, *though peacefully or by mistake*, wrongfully enters upon property owned or occupied by another." *Id.* (quoting *Frank Mayes & Assoc. v. Massod*, 238 Ga. App. 416, 418 (1999)). Moreover, it is well established that anyone that assists, directs, or induces a trespass is as liable as the actual trespasser. *Id.* (citing *Evans v. Cannon* 34 Ga. App. 467, 472

---

[7] "The bare right to possession of lands shall authorize their recovery by the owner of such right, as well as damages for the withholding of such right."
[8] "The bare possession of land shall authorize the possessor to recover damages from any person who wrongfully interferes with such possession in any manner."

(1925)); *see also Walls v. Moreland Altobelli Associates, Inc.*, 290 Ga. App. 199, 201 (2008). "Although Georgia law recognizes the doctrine of the innocent trespasser, whether a trespass was wilful or innocent is generally for the jury to decide." *Id.* (citing *Nichols v. Ga. Television Co.,* 250 Ga. App. 789, 790 (2001)).

Here, the Defendants argue they are entitled to summary judgment on Plaintiff's claim for tortious inference with property rights because Plaintiff has failed to provide proof the Defendants interfered with a "possessory interest" in her property. The Court, however, finds that viewing the evidence in a light most favorable to the Plaintiff, as it must, that Plaintiff has presented sufficient evidence as to create a genuine issue of material fact of an interference with her possessory interest.

The evidence shows that defendant SunTrust Mortgage, acting through its agent McCalla ran a foreclosure notice advertising the sale of the Plaintiff's property at 2627 Meadowview Drive. However, as the Defendants have conceded, SunTrust Mortgage was not the proper party to bring the foreclosure. Thereafter, SunTrust Mortgage, acting through McCalla, purported to sell the property to Foxfire, which took possession and who entered onto the property at least twice, once to change the locks and again to place a tarp over a portion of the roof that had been damaged by a falling tree limb. Foxfire's entry onto the Plaintiff's property was orchestrated by SunTrust Mortgage, acting through McCalla, when it sold Foxfire a property which SunTrust Mortgage had no right to sell.

Although Foxfire may be an innocent trespasser, in Georgia one who induces or instructs a trespass may be liable regardless of whether the actual trespasser is relieved of liability under the "innocent trespasser" doctrine. *Klingshirn v. McNeal*, 239 Ga. 112, 113 (1999) (An agent that is found to be an innocent trespasser does not mean the trespass did not occur or that a defendant is not liable for having directed the trespass). Therefore, although Plaintiff stated in her deposition

that no one from SunTrust Mortgage, SunTrust Bank, or McCalla instructed her to leave the property there is a genuine issue of material fact as to whether SunTrust Mortgage is liable to Plaintiff for causing Foxfire's entry and possession of property which Plaintiff still held title to and which neither McCalla, SunTrust Mortgage, nor Foxfire had a right to enter. Therefore, summary judgment is not appropriate as to Count 7(A)(2).

iii.    Count 7(A)(3): Fraud

In Count 7(A)(3) of her complaint Plaintiff asserts a fraud claim against defendants McCalla, SunTrust Bank, and SunTrust Mortgage. The basis for Plaintiff's fraud claim is McCalla's failure to disclose to her that the foreclosure had failed. Specifically, Plaintiff argues that when Mr. Silver responded to her e-mail regarding possible problems with the November 2, 2010, foreclosure by stating "we will look into this immediately," and then he failed to disclose to her that the foreclosure had not been completed, that "by necessary implication" he represented that the foreclosure had been completed. It is Mr. Silver's failure to disclose that Plaintiff alleges gives rise to a fraud claim.

To establish a fraud claim, the Plaintiff must prove five elements: (1) a false representation or omission of material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages. *Meyer v Waite*, 270 Ga. App. 255, 257 (2004). Defendants argue that summary judgment is proper for three reasons.

First, Defendants argue that Plaintiff's claim must fail because she has failed to produce evidence that Defendants ever made any false representations or omissions of material fact. The evidence shows that the only communication with Plaintiff and any of the Defendants was in an e-mail from Mr. Silver in which he advised Plaintiff "[w]e will look into this immediately."

Generally, a forward looking statement such as this cannot be the basis for a fraud claim. *Goodlett v. Ray Label Corp.*, 171 Ga. App. 377, 378 (1984) (Normally, a fraud claim cannot be predicated on statements which are in the nature of promises as to future events.) As the Georgia Court of Appeals explained in *Griffin v. State Bank of Cochran*, "[f]raud cannot consist of mere broken promises, unfilled predictions or erroneous conjecture as to future events. Representation concerning expectations and hopes are not actionable." 312 Ga. App. 87, 90-91 (2011).

Recognizing the problems with establishing evidence of a false representation the Plaintiff argues that McCalla's failure to disclose to Plaintiff that the foreclosure sale had not been completed was a "fraudulent concealment." In certain circumstances, a failure to disclose is the equivalent of an affirmative misrepresentation for the purposes of establishing fraud. For example, a failure to disclose may substitute for a false representation when one party is under an obligation to communicate or when direct inquiry is made and the truth evaded. *Raiford v. Nat'l Hills Exch., LLC*, No. CV 111-152, 2013 WL 1286204, at *27 (S.D. Ga. Mar. 27, 2013). "The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." O.C.G.A. § 23–2–53.

In Georgia, there is no confidential or fiduciary relationship between a bank and its customers, or between a borrower and a lender. *Baxter*, 307 Ga. App. at 292. Therefore, McCalla, as the law firm handling the foreclosure on behalf of the lender was under no duty to disclose anything to plaintiff as a result of a confidential or fiduciary relationship. However, the obligation to disclose may also arise when direct inquiry is made and the answer is evaded. *Raidford*, 2013 WL 1286204, at *4.  Here, Plaintiff sent Mr. Silver an e-mail which addressed possible issues with the foreclosure, to which he responded that he "will look into this immediately." While certainly not a false representation, there is a question as to whether this exchange between Mr. Silver and

the Plaintiff constitutes a "direct inquiry" and "evasive answer," and such questions are generally reserved for the finder of fact. *See Am. Petroleum Products, Inc. v. Mom & Pop Stores, Inc.*, 231 Ga. App. 1, 5 (1998).

Second, Defendants argue that Plaintiff's fraud claim must fail because she cannot prove justifiable reliance, as is required to establish a fraud claim under Georgia law. There is no confidential or fiduciary relationship between a borrower and a lender, and therefore no such relationship exists between a borrower and the law firm hired by a lender to conduct a foreclosure proceeding. *Baxter* 307 Ga. App. at 292. Therefore, because there was no confidential or fiduciary relationship between Plaintiff and the Defendants she could not justifiably rely on Mr. Silver's statements. *See id.* at 294 (finding that because there was no confidential relationship between the Bank and the Plaintiffs they could not justifiably rely on the Bank's statements). Moreover, "where the representation consists of general commendation or mere expressions of opinions, the party to whom it is made is not justified in relying upon it and assuming it to be true," but instead "is bound to make inquiry and examination himself so as to ascertain the truth." *Id.* "Although questions of due diligence often must be resolved by the trier of fact, that is not always the case. A party may fail to exercise due diligence as a matter of law." *Id.*

Here, Plaintiff has offered no evidence that she took any action to verify the information she claims was represented to her or should have been disclosed to her—the status of the foreclosure. The evidence does indicate that Plaintiff received tax notices from the City of Columbus and a request from the City of Columbus to clean up the property. Also, the evidence shows that Plaintiff contacted the City of Columbus regarding the tax notice and was advised that the foreclosure not had been completed and that she should contact McCalla. Thereafter, Plaintiff contacted McCalla and Mr. Silver indicated that he would "look into it this immediately." This

was the only contact between Plaintiff and Defendants. There is no evidence that she took any further steps following her contact with McCalla to investigate the situation. Therefore, Plaintiff's blind reliance that McCalla, an adverse third party, would investigate a problem on her behalf precludes her claim of justifiable reliance as a matter of law.

Third, and finally, Plaintiff's claim for fraud fails as a matter of law because she has failed to produce any evidence that she has suffered any damages as a result of McCalla's alleged "fraudulent concealment." As with any tort, a claim for fraud requires that the plaintiff prove she has sustainded damages that are the proximate result of the defendant's fraudulent actions. "To establish a cause of action for fraud, a plaintiff must show that actual damages, not simply nominal damages, flowed from the fraud alleged." *JTH Tax, Inc. v. Flowers*, 302 Ga. App. 719, 723 (2010) (quoting *Glynn County Fed. Employees Credit Union v. Peagler,* 256 Ga. 342, 344 (1986)). Thus, a fraud without damage, is not recoverable. *Id.*

Here, Plaintiff has alleged that she suffered damages as a result of Defendants fraudulent concealment in that she lost the use of her property, lost the right to sell her property, and that she lost certain items of personal property. However, these losses are not the proximate result of Mr. Silver's response of "[w]e will look into this immediately." Any damages suffered by plaintiff were the result of the botched foreclosure of her home, and not the result of Mr. Silver's e-mail response which took place over a year later. As discussed earlier, Plaintiff's reliance on McCalla to investigate any problems with the foreclosure was not justified and therefore any damages that Plaintiff may have suffered after the time she communicated with Mr. Silver are not the proximate result of the communication. Therefore, Plaintiff's claim for fraud must fail as a matter of law.

26

iv.    Count 7(B): Violation of the Fair Debt Collection Practices Act

Finally, in Count 7(B) of her complaint Plaintiff alleges that McCalla violated the Fair Debt Collections Practices Act, 15 U.S.C. § 1692f *et seq.* ("FDCPA"). The FDCPA imposes liability on a "debt collector" for "[t]aking or threatening to take any nonjudicial action to effect dispossession if – (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest." 15 U.S.C. § 1692f(6)(a). Plaintiff alleges that McCalla was a "debt collector" for the purposes of § 1692f when it commenced the foreclosure proceeding on behalf of SunTrust Mortgage, a creditor with no present right to foreclose, and that such action is a violation of the FDCPA. Plaintiff's claim must fail as a matter of law because it is barred by the statute of limitations.

Under the FDCPA "[a]n action to enforce any liability created by this subchapter may be brought in any appropriate United States District Court . . . within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d).  Here, the attempted foreclosure took place on November 2, 2010. Plaintiff had no contact with any of the Defendants until January 2012, when she received Mr. Silver's e-mail response. Plaintiff filed the underlying bankruptcy case on December 21, 2012. Unfortunately for Plaintiff both instances which could have possibly preserved her claim under the FDCPA took place well beyond the one-year statute of limitations period. In addition, in as much as Plaintiff argues the limitations period should be "equitably tolled," this argument fails for the reasons outline in Part IV(i) of this opinion. Accordingly, Plaintiff's claim for violation of the FDCPA fails as a matter of law and Defendants are entitled to a grant of summary judgment on Count 7(B) of Plaintiff's complaint.

## V.    Count 8: Conversion

In Count 8 of her complaint Plaintiff argues that if judicial estoppel applies then SunTrust's return of Foxfire's bid price was a conversion of her property—the excess proceeds from the foreclosure sale. Since judicial estoppel does not apply to this case, Plaintiff did not have a property interest in the proceeds of the foreclosure sale, and SunTrust did not commit a conversion by returning Foxfire's bid price.

## VI.   Count 9: State Law Attorney Fees

Lastly, in Count 9 of her complaint Plaintiff seeks to recover attorney fees pursuant to O.C.G.A. § 13-6-11. Section 13-6-11 allows a plaintiff to recover attorney fees when "the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." However, a "prerequisite to any award of attorney's fees and expenses under O.C.G.A. § 13-6-11 is the award of damages or other relief on the underlying claim." *United Companies Lending Corp. v. Peacock*, 267 Ga. 145, 146 (1996). Therefore, because Plaintiff's claim in Counts 7(A)(1) and 7(A)(2) remain, summary judgment as to her claim for attorney fees is not appropriate. Accordingly, the Court denies the Defendants' Motion as to the issue of attorney fees pursuant to O.C.G.A. § 13-6-11.

### Conclusion

In conclusion, the Court grants Defendants' Motions as to: Count 3 – Judicial Estoppel; Count 4 – Equitable Subordination; Count 6 – Violation of Automatic Stay; Count 7(A)(3) – Fraud; Count 7(B) – Violation of Fair Debt Collections Practices Act; and Count 8 – Conversion. The Court denies Defendants' Motions as to: Count 7(A)(1) – Wrongful foreclosure; Count 7(A)(2) –

Tortious interference with property rights; and Count 9 – State law attorney fees under O.C.G.A.

§ 13-6-11. The Court will enter an order in accordance with opinion.